

Filed/Docketed
Feb 09, 2023

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

IN RE:

**DAIMON WILLIAM JACOBS,**

**Debtor.**

**Case No. 21-10658-M**
**Chapter 7**

---

### MEMORANDUM OPINION

It has long been federal and Oklahoma state policy to encourage individuals to save for retirement.[1]  A major pillar of that policy has been to protect retirement funds from garnishment by creditors.[2]  As such, both federal and state law, including their corresponding tax codes, provide multiple avenues to shelter retirement funds from creditors.  That said, debtors can, and sometimes do, run afoul of the available means of protecting their retirement funds, resulting in the administration of those funds by a bankruptcy trustee.  This is one such case.

Before the Court is the Trustee's Motion for Summary Judgment on Trustee's Objection to Debtor's Claim of Exemption Relative to a "401(k): Solera Bank Account ending in 0319 Balance as of 06/06/2021 $198,306.44" (the "Motion"),[3] filed by Patrick J. Malloy III, the chapter 7 Trustee assigned to this case ("Trustee"); a Response filed by Daimon William Jacobs, debtor

---

[1] *Velis v. Kardanis*, 949 F.2d 78, 82 (3d Cir. 1991) ("But there can be no doubt that Congress has expressed a deep and continuing interest in the preservation of pension plans, and in encouraging retirement savings, as reflected in the statutes which have given us ERISA, Keogh plans and IRAs."); *In re Walker*, 139 B.R. 31, 33 (N.D. Okla. 1990) ("The exemption laws are intended for the protection of the family.") (citing *Anderson v. Canaday,* 131 P. 697, 698 (Okla. 1913)) (considering Okla. Stat. tit. 31, § 1(A)(20)), *aff'd*, 959 F.2d 894 (10th Cir. 1992).

[2] *See e.g., Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376 (1990) ("Section 206(d) [of the Employee Retirement Income Security Act of 1974 or ERISA] reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them.").

[3] Docket No. 31.  Trustee's exhibits related to the Motion are found at Docket No. 36.

herein ("Debtor");[4] a Reply filed by Trustee;[5] a Supplemental Brief in Response to Court's Minute

Order of 9/02/2022 filed by Trustee;[6] and a Supplemental Brief filed by Debtor.[7] On September

29, 2022, this matter was fully briefed and taken under advisement. The following findings of fact

and conclusions of law are made pursuant to Federal Rules of Bankruptcy Procedure 7056 and

9014.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is

proper pursuant to 28 U.S.C. § 1409.[8]  Reference to the Court of this matter is proper pursuant to

28 U.S.C. § 157(a).  The determination of the extent and nature of the estate's interest in property

and the allowance or disallowance of exemptions from property of the estate are core proceedings

as defined in 28 U.S.C. § 157(b)(2)(A, B).

### Summary Judgment Standard

The United States Court of Appeals of the Tenth Circuit has held that

> Summary judgment is appropriate when "the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to judgment as a matter of
> law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on
> each side so that a rational trier of fact could resolve the issue either way." *Adler v.
> Wal–Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is
> 'material' if under the substantive law it is essential to the proper disposition of the
> claim." *Id*. Put differently, "[t]he question . . .  is whether the evidence presents a
> sufficient disagreement to require submission to a jury or whether it is so one-sided
> that one party must prevail as a matter of law." *Shero v. City of Grove*, 510 F.3d
> 1196, 1200 (10th Cir. 2007) (quotation omitted). "On summary judgment the
> inferences to be drawn from the underlying facts must be viewed in the light most
> favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith*

---

[4] Docket No. 47.
[5] Docket No. 50.
[6] Docket No. 58.
[7] Docket No. 59.
[8] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy
Code, 11 U.S.C. § 101 *et seq.*

*Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quotation omitted).[9]

The Court will apply this standard to the Motion.

### Findings of Fact

Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on June 8, 2021 (the "Petition Date").[10]   As of the Petition Date, the Debtor was younger than age 59.[11]   In his Schedule C filed with the Petition, Debtor claimed as exempt an account held at Solera Bank ending in #0319, with a balance of $198,306.44 as of June 6, 2021 (the "Disputed Account").[12] The Trustee filed an objection to Debtor's claimed exemption on the following bases:

1. The Disputed Account does not constitute a qualified retirement plan under Internal Revenue Service rules;

2. The retirement plan related to the Disputed Account was not properly documented under federal law;

3. Debtor does not conduct sufficient business to support a one-participant § 401(k) plan;

4. A portion of the funds in the Disputed Account came from a Roth IRA as the result of a "prohibited transaction;"

5. Debtor withdrew funds from the Disputed Account in a prohibited manner; and

6. The trust supporting the Disputed Account is a sham.[13]

---

[9] *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).
[10] Docket No. 1.
[11] Debtor's Ex. 1, at Docket No. 47-2, at 5.
[12] Debtor's Ex. 29, at Docket No. 47-30, at 20.
[13] Trustee's Objection to Debtor's Claim of Exemption Relative to a "401(k): Solera Bank Account Ending in 0319 Balance as of 6/06/2021 $198,306.44," at Docket No. 14.

3

On motion of the parties, the Court entered a scheduling order, after which Trustee filed the Motion.

The funds in the Disputed Account traveled far and wide to get there. In late 2019, Debtor was laid off from his employment as a result of a business merger and consolidation. At the time Debtor was laid off, he held retirement funds in an employer-sponsored "401(k) and Retirement Savings Plan" through Wells Fargo. As of September 2020, those funds were valued at $411,811.78. In September 2020, Debtor transferred his retirement funds from the Wells Fargo account into three separate E*Trade accounts: 1) $207,736.23 into an account ending in #1514, an "IRA – Rollover" account; 2) $161,952.70 into an account ending in #9522, an "IRA – Rollover" account (together, the "E*Trade Traditional IRAs"); and 3) $42,052.39 into an account ending in #0106, a "Roth IRA" account (the "E*Trade Roth IRA").

In March 2019, Debtor formed an Oklahoma limited liability company, Breakthrough Management LLC ("Breakthrough"). Debtor is the sole member and manager of Breakthrough. Breakthrough provides financial services such as bookkeeping, preparation of tax returns, compilations, and related software implementations. After being laid off from his primary employer in late 2019, Debtor considered himself "self-employed" through Breakthrough. Debtor was compensated by his clients in cash but maintained regular business records, including keeping client names and amounts paid.[14] Debtor declared $7,650 in income generated through Breakthrough on his 2020 IRS Form 1040, which is also disclosed on his Statement of Financial Affairs filed with the Petition. Breakthrough generated no income in 2021 prior to the Petition Date, but generated roughly $11,000 through the remainder of 2021. No income had been generated in 2022 prior to a deposition of Debtor taken on behalf of Trustee in April. In the

---

[14] *See* Response, at Docket No. 47-1, at 4 ¶ 28.

schedules filed with his Petition, Debtor listed his interest in Breakthrough, but did not list it as an

employer on Schedule I; he described himself as "unemployed."   Debtor also disclosed that he

received unemployment income (presumably from the State of Oklahoma) in both 2020 and 2021.

On January 1, 2021, Breakthrough, through Debtor, created a trust to facilitate an

employer-sponsored 401(k) deferred compensation profit-sharing retirement plan based on a pre-

qualified plan provided by an online document preparation company (the "Solo 401k").[15]   Debtor's

stated reason for creating the Solo 401k was to facilitate a court ordered division of assets with his

former spouse.[16]   The purpose of the Solo 401k according to its organizing documents is as

follows:

> 1.1.3 Purpose. This Plan and the Trust are established for the purpose of providing
> retirement benefits to Eligible Employees in accordance with the Plan and the
> Adoption Agreement. If the Employer designates the Plan as a Cash or Deferred
> Profit Sharing Plan (CODA) in the Adoption Agreement, the Plan is also intended
> to enable Eligible Employees to supplement their retirement by electing to have the
> Employer contribute amounts to the Plan and the Trust in lieu of payments to such
> Employees in cash and the Plan and the Trust are intended to satisfy the provisions
> of Code section 401(k).[17]

The Solo 401k was adopted by Debtor, signing on behalf of Breakthrough as Employer and Plan

Administrator; and on behalf of himself as Trustee and Participant.[18]

---

[15] *See* Debtor's Ex. 19, Nabers Services, LLC Prototype Defined Contribution Trust Basic Plan 03
– "Stat Numus Trust" (the "Trust Agreement"), at Docket No. 47-20; Adoption Agreement for the
Nabers Services, LLC Prototype Standardized Cash or Deferred Profit Sharing Plan 03-004 (the
"Adoption Agreement"), at Docket No. 59-1, at 47; Nabers Services, LLC Prototype Defined
Contribution Plan Basic Plan 03 (the "Defined Contribution Plan"), at Docket No. 59-1, at 150.
*See also* 26 C.F.R. § 1.401–1(b)(1)(ii) (2020) ("A profit-sharing plan is a plan established and
maintained by an employer to provide for the participation in his profits by his employees or their
beneficiaries. . . . A profit-sharing plan within the meaning of section 401 is primarily a plan of
deferred compensation[.]").

[16] *See* Response, at Docket No. 47-1, at 5 ¶ 31-32. Trustee disputes that Debtor's rationale is an
established fact in the absence of extrinsic evidence. *See* Reply, at Docket No. 50, at 1.
Nonetheless, this is Debtor's stated rationale.

[17] Defined Contribution Plan, at Docket No. 59-1, at 158.

[18] Adoption Agreement, at Docket No. 59-1, at 117, 121.

The Solo 401k is governed by the laws of the State of Oklahoma.[19]  The parties dispute whether the Solo 401k is also governed by the Employee Retirement Income Security Act of 1974 ("ERISA").[20]  The supporting documents that serve as the basis for the Solo 401k state that the plan is subject to the provisions of ERISA.[21]  Additionally, the Trustee has alleged the documents supporting the Solo 401k lack necessary language to restrict the transfer of Debtor's beneficial interest in the account.  In response Debtor submitted, somewhat belatedly given its import, a copy of the Defined Contribution Plan, which includes an anti-alienation restriction at § 3.11.5, which reads:

> 3.11.5 Inalienability. The right of any Participant or his Beneficiary in any distribution hereunder or to any Account shall not be subject to alienation, assignment, or transfer, voluntarily or involuntarily, by operation of law or otherwise, except as may be expressly permitted herein. No Participant shall assign, transfer, or dispose of such right, nor shall any such right be subjected to attachment, execution, garnishment, sequestration, or other legal, equitable, or other process. The preceding shall also apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order, unless such order is determined to be a Qualified Domestic Relations Order or any domestic relations order entered before January 1, 1985.[22]

As part of the creation of the Solo 401k, Debtor opened two "Self Directed Checking" accounts with Solera Bank. In January and February 2021, Debtor caused each of the three

---

[19] The Defined Contribution Plan states that it shall be "construed, administered, and enforced in accordance with the provisions of [ERISA] and, to the extent applicable, the laws of the state specified in the Adoption Agreement," which is Oklahoma.  *See* Docket No. 59-1, at 281 ¶ 3.11.9 (Governing Law); Adoption Agreement, Docket No. 59-1, at 50.

[20] Pub. L. 93–406, Sept. 2, 1974, 88 Stat. 829 (codified as amended in scattered sections of 29 U.S.C.). *See also* Supplemental Brief of Debtor, at Docket No. 59, at 6 ("The Debtor is uncertain whether the 401(k) is an 'ERISA qualified' plan.").

[21] *See supra* note 19; Summary Plan Description for Breakthrough Management LLC 401k Plan, at Debtor's Ex. 59-1, at 321, 324 ("This plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA)."); *id.* at 342 ("As a participant in Breakthrough Management LLC 401k Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA).").

[22] Defined Contribution Plan, at Docket No. 59-1, at 278.

E*Trade accounts to be moved to the Solera Bank accounts.  After deducting the portion of the funds allocated to his former spouse under a divorce decree, Debtor transferred all remaining funds, consisting of the two E*Trade Traditional IRAs (the "Traditional IRA Rollover") and the E*Trade Roth IRA (the "Roth IRA Rollover"), to the Disputed Account at Solera Bank.[23]

The Disputed Account is a checking account held in the name of the Solo 401k trust opened for the purpose of holding its trust assets.  The Solo 401k includes a provision that allows a participant to receive a loan up to $50,000 from their account if the loan meets various conditions.[24] The Solo 401k provides that upon default or bankruptcy, all outstanding principal plus accrued interest will be reported as taxable income on IRS Form 1099-R and will be subject to federal and state income taxes and a 10% additional tax on early distributions if the default occurs before age 59-1/2.[25]

On May 31, 2021, Debtor applied for, and Breakthrough (through Debtor) approved, a loan to himself from the Solo 401k for $50,000 (the "401k Loan").[26]  The 401k Loan was made according to the terms of the Solo 401k, at an annual interest rate of 4.5%, to be repaid in twenty quarterly payments of $2,829.44 over 5 years commencing September 1, 2021.  Upon execution of the 401k Loan documents, no loan proceeds were removed from the Disputed Account.  Debtor stated that he simply kept track of the funds dispersed from the Disputed Account to ensure that he did not withdraw more than the $50,000 401k Loan maximum.  On June 3, 2021, Debtor

---

[23] See Motion, at Docket No. 31, at 3 ¶ 5(a).
[24]  See Adoption Agreement, at Docket No. 59-1, at 147. In order for a loan to be made, the loan must be adequately secured, repaid over an amortization schedule of no more than 5 years, with regular payments made no less than quarterly, and the loan must bear an interest rate of the published Prime Rate plus 1%.
[25] See id., at 164.
[26] Debtor's Ex. 28, loan documents, at Docket No. 47-29.

withdrew $1,500 from the Disputed Account, which he claims was a permissible draw on the 401k Loan.

On the Petition Date, the Disputed Account had a balance of $198,306.44. Of that, $42,033.93 appears to be attributable to the Roth IRA Rollover, and the residue of $156,272.51 is attributable to the Traditional IRA Rollover.[27] The outstanding balance of the 401k Loan funds in the Disputed Account was $50,000 less the $1,500 withdrawn by Debtor, or $48,500 (the "401k Loan Proceeds"). Debtor's schedules and statements filed in this case do not disclose the 401k Loan, the segregation of the 401k Loan Proceeds, or the segregation of the Roth IRA Rollover funds within the Disputed Account; nor do they list the Solo 401k as a creditor.[28]

During the months after the Petition Date, Debtor made numerous withdrawals from the Disputed Account for living expenses including mortgage payments, alimony payments, and school tuition. Debtor neither sought nor received permission from the Court or the Trustee to expend these funds. By January 2022, Debtor had withdrawn most or all of the remaining 401k Loan Proceeds from the Disputed Account. No payments were made on the 401k Loan until January 2022, when Debtor made a small payment of $2,000 to ensure that he did not exceed the $50,000 limit of the 401k Loan. After January, Debtor continued taking withdrawals from the Solo 401k to pay for living expenses, until this Court entered a Temporary Restraining Order, followed by a Preliminary Injunction, that required Debtor to cease removing funds from the

---

[27] The math in this case is simplified by the fact that the assets were never invested in anything but cash, and the Disputed Account did not bear interest. The Court finds that $42,033.93 is the amount Trustee alleges, and Debtor admits, was transferred from the Roth IRA into the Disputed Account. *See* Motion, at Docket No. 31, at 3 ¶ 5(a). The Court will disregard Trustee's request to deny Debtor's claim of exemption related to the Roth IRA Rollover in a different amount. *See id.* at 8.

[28] *See* Petition, at Docket No. 1. Debtor does disclose that a Roth IRA was rolled over into the Disputed Account, but does not provide an accounting of those funds. *See id.* at 60.

Disputed Account.[29]   Ultimately, Debtor removed approximately $55,000 from the Disputed Account after the Petition Date.[30]

To the extent the "Conclusions of Law" contain items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

**Conclusions of Law**

In the Motion, Trustee asks this Court to make a determination that the Solo 401k, whose only asset is the Disputed Account, was a non-exempt asset of Debtor's bankruptcy estate as of the Petition Date.  Before such a determination can be made, however, the Court must first establish whether the Solo 401k and the funds in the Disputed Account are property of the estate. If the Court finds the funds are excluded from the estate, they will not be available for distribution to creditors, unless other specific facts or provisions bring portions of the funds back into the estate.[31]

**I.    On summary judgment, the Court is unable to determine whether the Traditional IRA Rollover funds are property of Debtor's estate, or if any state law exemptions apply.**

**1.    _Are the Traditional IRA Rollover funds property of the estate?_**

Commencement of a case under the Bankruptcy Code creates an estate comprised of, among other things, all legal or equitable interests of the debtor in property as of the commencement of the case, "wherever located and by whoever held."[32]  "The scope of § 541 is broad and should be generously construed; an interest may be property of the estate even if it is

---

[29] _See_ Temporary Restraining Order, at Docket No. 38; Preliminary Injunction, at Docket No. 41.
[30] The facts regarding Debtor's post-petition use of the funds in the Disputed Account are not presently relevant to this matter but are provided to give context to the Court's and Trustee's concerns regarding Debtor's behavior in this case.
[31] _See infra_ Section II.
[32] § 541(a)(1).

novel or contingent."[33]  As a general matter, "[p]roperty interests are created and defined by state law."[34]  "Once that state law determination is made, however, we must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate."[35]

The United States Supreme Court has established that "[t]he Bankruptcy Code excludes from the bankruptcy estate property of the debtor that is subject to a restriction on transfer enforceable under 'applicable nonbankruptcy law.'"[36]  Moreover, § 541(c)(2) excludes property from the estate that would otherwise be included under the broad definition of § 541(a)(1):

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.[37]

Walking through the text provides the elements required for § 541(c)(2) to apply: 1) the debtor must hold a beneficial interest in a trust; 2) there must be a restriction on transfer, commonly referred to as an anti-alienation provision, of that beneficial interest; and 3) the restriction on transfer must be enforceable under applicable nonbankruptcy law.[38]  Courts have placed the burden of proving each of these elements on the debtor as of the commencement of the case.[39]

---

[33] *Walters v. Stevens, Littman, Biddison, Tharp & Weinberg, LLC (In re Wagenknecht)*, 971 F.3d 1209, 1213 (10th Cir. 2020) (citing *Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir. 2008)).

[34] *Butner v. United States*, 440 U.S. 48, 55 (1979). *See also Case v. Hilgers (In re Hilgers)*, 371 B.R. 465, 468 (10th Cir. BAP 2007) ("Thus, to determine whether the Debtor's interests in the Trusts were excluded from his estate, we must analyze the nature of that interest, under applicable state law, as of the time of his bankruptcy filing.").

[35] *In re Marshall*, 550 F.3d at 1255 (quoting *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002)).

[36] *Patterson v. Shumate*, 504 U.S. 753, 755 (1992) (quoting § 541(c)(2)).

[37] § 541(c)(2).

[38] *Patterson*, 504 U.S. at 758 ("The natural reading of [§ 541(c)(2)] entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law."); *McDonnell v. Gilbert (In re Gilbert)*, 642 B.R. 687, 691-92 (Bankr. D.N.J. 2022) (listing elements); *In re McDonald*, 353 B.R. 287, 293 (Bankr. D. Kan. 2006).

[39] *In re Cross*, 640 B.R. 388, 390-91 (Bankr. W.D. Mich. 2022); *In re Rogers*, 538 B.R. 158, 161 (Bankr. N.D. Ga. 2015); *In re Robben*, 502 B.R. 572, 578 (Bankr. D. Kan. 2013) (citing *Rhiel v.*

**a. The Solo 401k is a valid trust under Oklahoma law.**

The Trustee does not challenge that the Solo 401k is a valid trust under Oklahoma law.[40] Breakthrough is the owner and sponsor of the Solo 401k; Debtor is the sole participant and beneficiary.  As the sole beneficiary of the Solo 401k, Debtor holds the beneficial interest of all funds *in that trust*. A transfer from a traditional IRA into a § 401(k) plan qualifies as a valid or permitted rollover under IRS Regulations.[41]  Therefore, Debtor's interest in the Traditional IRA Rollover funds that were placed in the Solo 401k qualifies as a beneficial interest in a valid trust under Oklahoma law.  Based on the supporting documents filed by Debtor, the Court finds, *to the extent funds were transferred from the E\*Trade Traditional IRAs into the Disputed Account*, those funds were held in a valid trust under Oklahoma law as of the Petition Date sufficient to support the first element of § 541(c)(2).[42]

---

*Adams (In re Adams)*, 302 B.R. 535, 540 (6th Cir. BAP 2003)); *In re McDonald*, 353 B.R. at 293 n.23.

[40] *See* Okla. Stat. tit. 60, § 175.6 ("A trust may be created by: A. A declaration by the owner of property that he holds it as trustee for another person, or for himself and another person or persons[.]"); *In re Tucker*, 346 B.R. 844, 850 (Bankr. E.D. Okla. 2006) ("The elements of an express trust are the intent to create a trust, a clearly defined trust res, and specific trust duties.") (citation omitted). The Oklahoma Supreme Court, in *Greening Donald Co., Ltd. v. Oklahoma Wire Rope Products, Inc.*, 766 P.2d 970, 972 (Okla. 1988), noted that an IRA is a recognized form of trust pursuant to I.R.C. § 408(a).  This Court applies the same logic to a 401(k) plan under I.R.C. § 401(a). *See* I.R.C. § 401(a) (listing requirements to qualify as "[a] trust created or organized in the United States and forming part of a . . . profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries[.]"). Trustee certainly challenges the ability of Debtor to use such a trust to hold and shelter certain funds from taxation under IRS regulations, but he does not present a cogent objection that the Solo 401k vehicle itself does not qualify as a valid trust under Oklahoma law.

[41] *See* I.R.S. 2021 Pub. 590-A, Table 1-4 (Rollover Chart), at 21 (defining a 401(k) as a qualified plan for a rollover from a traditional IRA). *See also Bohner v. Comm'r*, 143 T.C. 224, 227–28 (2014) ("A rollover contribution is any amount paid or distributed out of an IRA . . . to the individual for whose benefit the account . . . is maintained if the entire amount received is paid into an eligible retirement plan no later than 60 days after receipt.") (citing I.R.C. § 408(d)(3)(A)(ii)).

[42] As noted *infra* at Section II, not all funds held in the Disputed Account enjoy the same legal protection.  Additionally, this is not a finding that the Solo 401k is qualified for tax deferral under

**b. The Solo 401k contains a necessary restriction on transfer.**

Trustee challenges whether the Solo 401k contains the necessary restriction on transfer to meet the second element of § 541(c)(2).  The Defined Contribution Plan states that the beneficial interest of Debtor, as a participant, is not "subject to alienation, assignment, or transfer, voluntarily or involuntarily, by operation of law or otherwise" and that Debtor, as a participant may not "assign, transfer, or dispose of such [interest], nor shall any such [interest] be subjected to attachment, execution, garnishment, sequestration, or other legal, equitable, or other process."[43] The Court finds that such language "satisfies the literal terms of § 541(c)(2)."[44]  Trustee argues that Debtor's extensive control over the assets of the Solo 401k indicates that there is no real restriction imposed on Debtor when it comes to the assets contained in the Solo 401k, and, therefore, the Solo 401k is not a valid spendthrift trust under Oklahoma law.  While the Court agrees with Trustee's premise that Oklahoma law does not allow the creation of a self-settled spendthrift trust,[45] the point is not dispositive.[46]  The Court of Appeals for the Tenth Circuit has (at least) twice held that the protections of § 541(c)(2) are not limited to state-recognized

---

any tax law of the United States, which is at the heart of this controversy, only that it is a valid trust under Oklahoma trust law.

[43] *See* Defined Contribution Plan, at Docket No. 59-1, at 278 ¶ 3.11.5.

[44] *Patterson v. Shumate*, 504 U.S. 753, 759 (1992).

[45] *See* Okla. Stat. tit. 60, § 175.25(H) ("Nothing in this act shall authorize a person to create a spendthrift trust or other inalienable interest for his own benefit.").  *See also Greening Donald*, 766 P.2d at 973 (because retirement plan was established for debtor's own benefit, it could not be a spendthrift trust, and thus was not a prohibited spendthrift trust under Oklahoma law); *Gladwell v. Harline (In re Harline)*, 950 F.2d 669, 671-72 (10th Cir. 1991) (finding debtor's power as sole officer, director, and shareholder to amend or terminate the plan was fatal to its spendthrift status).

[46] *In re Harline*, 950 F.2d at 672-73 (conclusion that plan was not a valid spendthrift trust did not resolve issue of whether debtor's beneficial interest in trust was part of his bankruptcy estate); *Greening Donald*, 766 P.2d at 973 ("The argument [that an IRA was a prohibited spendthrift trust] is simply an attempt at renaming this asset in an effort to avoid the protections authorized by the legislature.").

spendthrift trusts.[47]  As long as a trust contains the requisite anti-alienation language enforceable under any applicable nonbankruptcy law, § 541(c)(2) *does not* create an additional requirement that the trust at issue also qualify as a spendthrift trust.[48]

    **c.**  **On summary judgment, the Court is unable to determine whether the restriction on transfer is enforceable under applicable nonbankruptcy law.**

The final element of § 541(c)(2) lies at the heart of this controversy.  The statute requires a restriction on transfer in the applicable trust be *enforceable under any relevant nonbankruptcy law*.[49]  This has been found to apply to both federal *and* state nonbankruptcy law.[50]  Debtor relies upon three sources of nonbankruptcy law to exclude the Traditional IRA Rollover funds from his bankruptcy estate.[51]  The first is ERISA, which includes a requirement that a qualified plan contain

---

[47] *Walker v. Mather (In re Walker)*, 959 F.2d 894, 897 (10th Cir. 1992) ("[T]he phrase [applicable nonbankruptcy law] on its face is clear and broad and could encompass federal ERISA anti-alienability provisions as well as state provisions aside from spendthrift trust law.") (internal citations omitted) (applying Oklahoma law); *In re Harline*, 950 F.2d at 674-75 ("[W]e do not find 'a clearly expressed legislative intention' to limit the meaning of § 541(c)(2) exclusively to state-recognized spendthrift trusts.") (applying ERISA).  *See also Patterson*, 504 U.S. at 758 ("The natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under *any relevant nonbankruptcy law*. . . . The text contains no limitation on 'applicable nonbankruptcy law' relating to the source of the law.") (emphasis added).

[48] *See Meehan v. Wallace (In re Meehan)*, 102 F.3d 1209, 1213 (11th Cir. 1997) (concluding that the Supreme Court in *Patterson* implicitly rejected the argument that the § 541(c)(2) exclusion should be limited to spendthrift trusts).

[49] *See Patterson*, 504 U.S. at 758.

[50] *See, e.g., id.* at 759 (concluding "applicable nonbankruptcy law" is not limited to state law); *In re Walker*, 959 F.2d at 897; *In re Harline*, 950 F.2d at 674.

[51] Debtor also proposes that the Oklahoma exemption statute, Okla. Stat. tit. 31, § 1(A)(20), provides an additional statutory basis to "enforce" a restriction on transfer under § 541(c)(2).  The Court rejects the premise that the Oklahoma exemption statute prevents any property from becoming property of the estate; it merely serves to exempt property that has already become part of the estate under § 541.  Additionally, the Trustee proposes his own alternative source of law, at Okla. Stat. tit. 60, § 175.25(H), which provides that a self-settled trust cannot be a spendthrift trust.  The Court agrees with Trustee that the Solo 401k is not a spendthrift trust under Oklahoma law. *See supra* note 45 and accompanying text.

an anti-alienation provision.[52] The second is I.R.C. § 401(a)(13), which mimics ERISA's requirement for a restriction on alienation to qualify for tax deferment.[53] Last are §§ 326-28 of title 60 of the Oklahoma Statutes, "which provide[] that retirement trusts are exempt from state garnishment proceedings provided they meet certain criteria."[54] We discuss each in turn.

In *Patterson v. Shumate*, the United States Supreme Court found that ERISA provides statutory enforcement for transfer restrictions found in covered plans.[55] Although expressing some reservations, Debtor asserts that the Solo 401k is governed by ERISA, citing various references to same in the Solo 401k documents.[56] The Department of Labor, the Supreme Court, and the Court of Appeals for the Tenth Circuit have all concluded that Title I of ERISA does *not* apply to plans that cover only sole owners or partners and their spouses, i.e., plans that have no employees.[57]

---

[52] *See supra* note 20.  *See also* ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.").

[53] I.R.C. § 401(a)(13) ("A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated.").

[54] *In re Walker*, 959 F.2d at 897; Okla. Stat. tit. 60, §§ 326-28.

[55] *Patterson v. Shumate,* 504 U.S. 753 (1992).  *See also Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 6 (2004) (noting that ERISA "provides for civil and criminal enforcement of the Act.") (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361, n.1 (1980)); *Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Tr.*, 744 F.3d 623, 628-29 (10th Cir. 2014) ("ERISA was enacted to protect the interests of participants in employee benefit plans and their beneficiaries. It does so in part by providing for appropriate remedies, sanctions, and ready access to the Federal courts. Most of these protections are found in Title I of the Act, which includes provisions for civil and criminal enforcement.") (internal citations omitted).

[56] *See supra* notes 19-21 and accompanying text.

[57] *See* 29 C.F.R. § 2510.3–3(b) ("Plans without employees. For purposes of title I of [ERISA] and this chapter, the term 'employee benefit plan' *shall not include any plan . . . under which no employees are participants* covered under the plan, as defined in paragraph (d) of this section."); *id.* § 2510.3–3(c) ("Employees. For purposes of this section and except as provided in § 2510.3–5(e) and § 2510.3–55(d): (1) An individual and his or her spouse *shall not be deemed to be employees* with respect to a trade or business, whether incorporated or unincorporated, *which is wholly owned by the individual or by the individual and his or her spouse*[.]") (emphasis added); *Raymond B. Yates*, 541 U.S. at 21 n.6 ("Courts agree that if a benefit plan covers only working owners, it is not covered by Title I [of ERISA]."); *Dahl*, 744 F.3d at 629 ("A 'benefit plan is

Although the Solo 401k may contain language required by ERISA, and may in fact conform to the requirements of ERISA in every way, it is not *enforceable* under ERISA by its terms.[58]  The Court finds that because Debtor is the sole owner of Breakthrough and the only participant of the Solo 401k, the Solo 401k does not qualify as an "employee benefit plan" whose assets are protected by ERISA.[59]

Debtor's second proffered source of federal law fares no better.  Debtor suggests that I.R.C. § 401(a)(13), which contains a requirement that a plan contain restrictions on transfer similar to those found in Title I of ERISA, provides the necessary source of nonbankruptcy law to satisfy § 541(c)(2).[60]  Courts have roundly rejected this argument.[61]  Unlike Title I of ERISA, which provides extensive criminal and civil enforcement mechanisms for qualified plans, I.R.C. § 401(a)

---

subject to ERISA only if it provides benefits to at least one employee.'") (citing *Sipma v. Mass. Cas. Ins. Co.*, 256 F.3d 1006, 1009 (10th Cir. 2001)).

[58] *Patterson*, 504 U.S. at 760 (referring to the provisions in ERISA that allow parties in interest, the Secretary of Labor, or the courts to enforce its prohibition on the assignment or alienation of pension benefits); *Dahl*, 744 F.3d at 628-29. *See also* J. Gordon Christy & Sabrina Skeldon, *Shumate and Pension Benefits in Bankruptcy*, 2 J. Bankr. L. & Prac. 719, 725-26 (1992) ("A plan is subject to ERISA solely on the basis of the type of benefits it provides.") ("ERISA Section 206(d) is contained in Part 2 of Title I of ERISA. Benefits under plans that are not subject to Part 2 of Title I of ERISA do not receive the protection of Section 206(d).").

[59] This result should come as no surprise.  Debtor's own exhibits provided by his online document provider answer the question of "Is the Solo 401k an ERISA Plan?" in the negative.  *See* Debtor's Ex. 10, at Docket No. 47-11.

[60] The Court in *Patterson* noted that both sections provide similar requirements that qualified trusts contain anti-alienation provisions. *Patterson*, 504 U.S. at 759.

[61] *In re Witwer*, 148 B.R. 930, 937 (Bankr. C.D. Cal. 1992) *aff'd,* 163 B.R. 614 (9th Cir. BAP 1994), *abrogated on other grounds by Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004); *In re Moses*, 215 B.R. 27, 35 (9th Cir. BAP 1997) ("Further, a plan which is tax qualified, but not 'ERISA qualified,' does not have a comparable federal statute for enforcing the anti-alienation provision required by I.R.C. § 401(a)(13).") (citations omitted), *aff'd*, 167 F.3d 470 (9th Cir. 1999); *In re Crosby*, 162 B.R. 276, 281 (Bankr. C.D. Cal. 1993) ("As is the case under I.R.C. § 401(a)(13), [California state law] Section 7476(a) does not create any substantive rights that a beneficiary or participant of a qualified plan can enforce, nor does it provide for a private right of action enforcing the anti-alienation provision of the Plan.").

contains no such provisions.[62]  The latter statute relates to whether a plan meets the criteria for tax qualification, but "does not appear to create any substantive rights that a beneficiary or participant of a qualified retirement trust can enforce."[63]  Debtor does not cite a single case to suggest otherwise. This Court joins those courts that find I.R.C. § 401(a) does not provide an independent source of nonbankruptcy law for purposes of excluding property from the estate under § 541(c)(2).

Lastly, when ERISA does not operate to provide enforcement of a restriction on transfer under § 541(c)(2), state law *may* come to the rescue.[64]  Such is the case under Oklahoma law.[65] Prior to the enactment of ERISA, only state law provided for the protection of retirement funds from the garnishment of creditors.[66]  Under sections 326-28 of title 60 of the Oklahoma Statutes, profit-sharing plans *may* be created, assuming they conform to certain statutory requirements, which are protected from the claims of creditors.[67]  The relevant sections of Title 60 state:

§ 326. Perpetuities and restraints on alienation

No retirement, pension or profit sharing plan, qualified for tax exemption purposes under present or future Acts of Congress, or any trusts, insurance and annuity contracts constituting a part thereof, shall be construed as violating the rule or law against perpetuities, or any rule or law against restraints on alienation; provided the power of alienation or the vesting of the interest of any person in such plan, trust or

---

[62] *See supra* note 55; *In re Witwer*, 148 B.R. at 937; Christy & Skeldon, *supra* note 58, at 725 ("the IRC does not itself confer substantive rights on participants").

[63] *In re Witwer*, 148 B.R. at 937.

[64] *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 264 (9th Cir. 1991) ("If [a plan is] not covered by ERISA . . . then California law controls."); *In re Moses*, 215 B.R. at 35 ("Accordingly, for a pension plan which is not 'ERISA qualified,' the enforceability of the anti-alienation provision must still be determined under applicable state law.").

[65] *Greening Donald Co., Ltd. v. Okla. Wire Rope Products, Inc.*, 766 P.2d 970, 971 (Okla. 1988) ("There can be no question that under 60 O.S.1981 § 327 et seq., an IRA *may* be created which is exempt from the claims of creditors. The IRA *must,* however, conform to certain requirements in order to be so protected.").

[66] *Id.* ("The United States Supreme Court has recognized that exemptions from attachment and garnishment are purely questions of state law.") (*citing Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183 (1941)).

[67] *Id.*; Okla. Stat. tit. 60, § 326-28.  All further textual references to these statutes will only refer to the title and section numbers.

contract shall not be suspended for a longer period than the duration of the lives of the designated beneficiaries of such particular interest, in being at the time of designation, plus twenty-one (21) years.[68]

§ 327. Provisions against alienation or encumbrance

Any such plan, trust or contract may provide against the alienation or encumbrance of the interest of any person therein and further provide that no interest therein shall be subject to garnishment, attachment, execution or the claims of creditors of the persons having an interest therein.[69]

§ 328. Power to alienate or encumber--Exemption from process and claims

Any person having an interest in any such plan, trust or contract, or in any property or any right subject to any such plan, trust or contract, containing the provisions set forth in the next preceding section of this Act, or provisions of substantially the same force and effect, shall have no right to alienate or encumber such right or interest in any manner contrary thereto, and the interest of any such person in any such plan, trust or contract, or in any property or any right subject to any such plan, trust or contract, shall be exempt from garnishment, attachment, execution or the claims of creditors.[70]

The Court of Appeals for the Tenth Circuit found that these statutes provide the necessary "applicable nonbankruptcy law" to exclude property from the estate under § 541(c)(2), so long as certain conditions are met.[71]  As a profit-sharing plan, the Solo 401k meets the initial threshold for §§ 326-28 of Title 60 to apply for exclusion.[72]  The Oklahoma Supreme Court, in *Greening Donald Co., Ltd. v. Oklahoma Wire Rope Products, Inc.*,[73] read the statute to require the plan: 1) be exempt from taxation under "current Federal Tax Laws," citing § 326 of title 60; and 2) "contain provisions

---

[68] Okla. Stat. tit. 60, § 326.

[69] *Id.* § 327.

[70] *Id*. § 328.

[71] *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 897 (10th Cir. 1992) ("We recently . . . joined three other circuits in holding that 'applicable nonbankruptcy law' is not limited to state spendthrift trust law. Instead, we indicated that '[t]he phrase on its face is clear and broad' and could encompass federal ERISA anti-alienability provisions *as well as state provisions aside from spendthrift trust law*.") (emphasis added) (citing *Gladwell v. Harline (In re Harline)*, 950 F.2d 669, 674 (10th Cir. 1991)).

[72] Okla. Stat. tit. 60, § 326.

[73] 766 P.2d 970 (Okla. 1988).

indicating the parties' intent that the [profit-sharing plan] be inalienable and protected," citing § 328 of Title 60.[74]  The Court will apply this test to the Solo 401k.

Looking initially at the second prong of the *Greening Donald* test, the Court easily finds that the same inalienability language in the Defined Contribution Plan, discussed *supra*, which meets the anti-alienation requirement of § 541(c)(2), also meets the requirements under § 328 of Title 60.[75]  Of note, the *Greening Donald* court discussed the difference between restrictions on *alienability* required by the statute, and restrictions on *termination, revocation, or control* by a custodian, which are not.[76]  The Court finds that the Solo 401k contains sufficient language to meet the second prong of the *Greening Donald* test.

The first prong of the *Greening Donald* test proves more complicated: it requires the Court to address whether the Solo 401k is qualified for tax exemption under I.R.C. § 401(a).[77]  This point is bitterly disputed by the parties.  I.R.C. § 401(a) sets out numerous requirements for a plan to be designated as a "qualified" trust for purposes of tax exemption.[78]  In addition to the facial requirements of I.R.C. § 401(a), a plan must also be *operated* in compliance with the statute; failure to do so may result in the loss of the plan's favorable tax qualification under I.R.C. § 401(a).[79]

---

[74] *Id.* at 972 (noting § 327 merely creates the option of declaring a plan as exempt); *In re Walker*, 959 F.2d at 897-98 ("Specifically, the [*Greening Donald*] court applied the statute to an Individual Retirement Account, holding that the Account was exempt from garnishment because it qualified for tax deferral treatment under the Internal Revenue Code and contained an anti-alienability clause.").

[75] *See supra* Section I(1)(b).

[76] *Greening Donald,* 766 P.2d at 972-73.

[77] I.R.C. § 401(a), (k) ("A qualified cash or deferred arrangement is any arrangement which is part of a profit-sharing . . . plan which meets the requirements of subsection (a)[.]").

[78] I.R.C. § 401(a); Treas. Reg. § 1.401–1. *See also In re Adams*, 2020 OK 80, ¶ 22, 474 P.3d 346, 352 ("In the context of employer retirement plans and arrangements, 'qualified' has a specific meaning. For a plan to 'qualify' under the provisions of the I.R.C., it must comply with the provisions of I.R.C. Section 401.") (citing I.R.C. § 401(a), (k)(2) (2020)).

[79] *See* Treas. Reg. § 1.401–1(b)(3) ("The law is concerned not only with the form of a plan *but also with its effects in operation*.") (emphasis added); *In re Jie Xiao*, 592 B.R. 258, 269 (Bankr.

This is unlike a plan subject to ERISA, which is protected regardless of the subsequent operation of the plan.[80]  As noted by the Treasury Regulation interpreting I.R.C. § 401(a), "[a]ll of the surrounding and attendant circumstances and the details of the plan will be indicative of whether it is a bona fide stock bonus, pension, or profit-sharing plan for the exclusive benefit of employees in general."[81] This means the Court must evaluate the facts and circumstances of a particular plan on a case-by-case basis to determine whether it is in compliance with I.R.C. § 401(a), i.e., whether it "qualifies for tax exemption" under that statute as required by § 326 of Title 60.[82] Unfortunately, phrases like "case-by-case" and "facts and circumstances" usually sound the death knell for a motion for summary judgment.

---

D. Conn. 2018) ("In determining whether a plan complies with the requirements of IRC Section 401(a), the law looks not only to the form of the plan, but also to its operation."), *aff'd sub nom. Xiao v. Chorches*, 610 B.R. 183 (D. Conn. 2019); *In re Handel*, 301 B.R. 421, 432 (Bankr. S.D.N.Y. 2003) ("[A] plan's favorable tax qualification under IRC § 401(a) can be revoked if a plan that facially conforms with ERISA is operated in violation of the requirements of IRC § 401(a).").

[80] *See e.g., McDonnell v. Gilbert (In re Gilbert)*, 642 B.R. 687, 694 (Bankr. D.N.J. 2022) ("[T]he Supreme Court has resolutely refused to recognize any bad faith exception to ERISA's anti-alienation provisions even for 'employee malfeasance or for criminal misconduct,' and held that only Congress could create such an exception.") (citing *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365 (1990)); *In re Handel*, 301 B.R. at 432 ("[A]s long as the Plan was drafted to comply facially with Part I of ERISA, as it was, the Plan's anti-alienation provision is enforceable under ERISA notwithstanding that the Plan was operated in violation of ERISA.") (citing Christy & Skeldon, *supra* note 58, at 725)); *Healey v. Meinen (In re Meinen)*, 228 B.R. 368, 380 (Bankr. W.D. Pa. 1998) ("[T]his Court holds . . . that, as a legal matter, an interest in a pension plan that is subject to, or governed by, ERISA, and which also contains an anti-alienation clause as required pursuant to ERISA § 206(d)(1), is excluded from property of a bankruptcy estate pursuant to § 541(c)(2) *regardless of whether said pension plan is also tax-qualified*.") (emphasis added).

[81] Treas. Reg. § 1.401–1(b)(3).

[82] Although there are very few cases interpreting the specific requirements for a plan to qualify under §§ 326-28 of Title 60, there are numerous cases interpreting whether funds qualify as being "in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986" under § 522(b)(3)(C) or an "interest in a retirement plan or arrangement qualified for tax exemption or deferment purposes under present or future Acts of Congress" under § 1(A)(20) of the Oklahoma Statutes.  The Court will look to those cases where necessary.

Trustee points to anomalies in the creation and operation of the Solo 401k as well as Debtor's treatment and control over the Disputed Account in support of his position that the Solo 401k is not a qualified plan under I.R.C. § 401(a).  He suggests that both the creation of the Solo 401k and approval of the 401k Loan constitute "sham transactions" by which Debtor *intended* to "access [] otherwise restricted moneys without any tax or creditor consequence."[83]   Although Trustee has not articulated any tax or consequence the Debtor has managed (or is expected) to avoid, we must focus on the Trustee's accusation of fraudulent intent.[84]  Trustee's objections include 1) the Solo 401k did not meet IRS criteria that the Debtor be self-employed; 2) Debtor made no contributions to the Solo 401k after it was initially funded; and 3) Debtor never invested the assets of the Solo 401k in anything but cash.  Trustee suggests that Debtor's fraudulent intent, if proven, will prevent the Solo 401k from qualifying for tax deferral under I.R.C. § 401(a) under the operational test, and thus cause it to fail the *Greening Donald* test for exclusion under § 541(c)(2).  But we are here on a motion for summary judgment.  To the extent the Court must draw inferences from the underlying facts, they must favor Debtor at this point in the proceeding.[85] "As a general rule, questions involving a person's intent or other state of mind cannot be resolved by summary judgment."[86]  At this stage, the Court is unable to resolve whether the Solo 401k is

---

[83] *See* Motion, Docket No. 31, at 16.

[84] To the contrary, it appears that Debtor will face quite large (and largely unnecessary) tax consequences as a result of his various pre-petition transfers involving the Solo 401k, discussed *infra* Section II.

[85] *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

[86] *United States v. Fletcher (In re Fletcher)*, 489 B.R. 224 (Bankr. N.D. Okla. 2013) (quoting *Compton v. Herrman (In re Herrman)*, 355 B.R. 287, 291 (Bankr. D. Kan. 2006)). *See also Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980) ("[Q]uestions of intent, which involve intangible factors including witness creditability, are matters for consideration of the fact finder after a full trial.") (citing *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431 (10th Cir. 1979)).

"qualified for tax exemption purposes under present or future Acts of Congress," i.e., I.R.C. § 401(a).[87]  On this issue, the Motion must be denied.

**2.**   ***Does Oklahoma state exemption law remove the Traditional IRA Rollover funds from the estate?***

Debtor asserts that even if the funds from the Traditional IRA Rollover in the Disputed Account on the Petition Date properly come into the estate under § 541, they are subject to a claim of exemption under Oklahoma law.[88]  "An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor."[89]  Ordinarily, the Court would postpone a discussion of claimed exemptions until a decision had been made regarding the property's inclusion in the estate.[90]  This case presents a unique situation, where the factual and legal issues needed to make both determinations are identical.  Because the parties have placed so much focus on Debtor's claimed state law exemptions, the Court believes a brief discussion of the relevant statute is in order.

---

[87] *See In re Rogers*, 538 B.R. 158, 174-75 (Bankr. N.D. Ga. 2015) (fact issue as to whether debtor's profit sharing plan was "qualified" under the Internal Revenue Code precluded court from finding, as a matter of law, that it was property of the estate on summary judgment).

[88] For reasons that are unclear to the Court, Debtor has chosen not to avail himself of the federal bankruptcy exemption for "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401 . . . of the Internal Revenue Code of 1986" found in § 522(b)(3)(C).  That exemption appears to be similar to—*and possibly more generous than*—the exemptions provided by Oklahoma law. *See, e.g.,* Okla. Stat. tit. 31, § 1(A)(20) (exemption subject to the Uniform Fraudulent Transfer Act under Oklahoma law).  The Court merely raises this issue to encourage the parties to address all of Debtor's exemption claims in a single proceeding, instead of dealing with them on a piecemeal basis. Because Debtor has not raised or briefed the application of a federal bankruptcy exemption, the Court will not discuss it further. *See Clark v. Rameker*, 573 U.S. 122 (2014) for a thorough discussion of § 522(b)(3)(C).

[89] *Owen v. Owen*, 500 U.S. 305, 308 (1991).

[90] *See id.* at 308 ("No property can be exempted (and thereby immunized), however, unless it first falls within the bankruptcy estate."); *In re Gibson*, 433 B.R. 868, 870 (Bankr. N.D. Okla. 2010) ("It is axiomatic that in order to remove property from a bankruptcy estate, the property must first be property of the bankruptcy estate.").

A debtor may exempt certain property from the bankruptcy estate pursuant to § 522(b)(1) of the Bankruptcy Code.  In a chapter 7 bankruptcy case, all exemption entitlements are determined as of the date the case is filed.[91] Oklahoma has chosen to opt out of the federal exemption scheme, limiting certain exemptions available in bankruptcy cases to those provided under state law.[92] Oklahoma law provides for the following exemption in retirement accounts:

> A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:
>
> . . .
>
> 20. **Subject to the Uniform Fraudulent Transfer Act**, Section 112 et seq. of Title 24 of the Oklahoma Statutes, **any interest in a retirement plan or arrangement qualified for tax exemption or deferment purposes under present or future Acts of Congress;** provided, any transfer or rollover contribution between retirement plans or arrangements which avoids current federal income taxation shall not be deemed a transfer which is fraudulent as to a creditor under the Uniform Fraudulent Transfer Act. "Retirement plan or arrangement qualified for tax exemption purposes" shall include without limitation, trusts, custodial accounts, insurance, annuity contracts and other properties and rights constituting a part thereof. By way of example and not by limitation, retirement plans or arrangements qualified for tax exemption or deferment purposes permitted under present Acts of Congress **include defined contribution plans** and defined benefit plans **as defined under the Internal Revenue Code ("IRC")**, individual retirement accounts, individual retirement annuities, simplified employee pension plans, Keogh plans, IRC Section 403(a) annuity plans, IRC Section 403(b) annuities, Roth individual retirement accounts created pursuant to IRC Section 408A, educational individual

---

[91] § 522(b)(3)(A); *In re Crow*, 987 F.3d 912, 921 (10th Cir. 2021) ("[A] debtor's right to an exemption is determined on the petition date.") (citing *White v. Stump*, 266 U.S. 310, 313 (1924)); *In re Marcus*, 1 F.3d 1050, 1051 (10th Cir. 1993) ("Section 522 of title 11 governs exemptions generally. That statute defines exempt property as any that is 'exempt under . . . State or local law that is applicable *on the date of the filing of the petition.*'") (quoting § 522(b)(2)(A)); *In re Klaus,* 228 B.R. 475, 478 (Bankr. N.D. Okla. 1999).

[92] *See* § 522(b)(2); Okla. Stat. tit. 31, § 1(B); *In re Kretzinger*, 103 F.3d 943, 945 (10th Cir. 1996). The Court again notes that the Bankruptcy Code provides additional exemptions that are available to all debtors regardless of state law. *See supra* note 88; *Clark v. Rameker*, 573 U.S. at 124 ("Under § 522, debtors may elect to claim exemptions either under federal law, see § 522(b)(2), or state law, see § 522(b)(3). Both tracks permit debtors to exempt 'retirement funds.' See § 522(b)(3)(C) (retirement funds exemption for debtors proceeding under state law); § 522(d)(12) (identical exemption for debtors proceeding under federal law)."

22

retirement accounts created pursuant to IRC Section 530 and eligible state deferred compensation plans governed under IRC Section 457. This provision shall be in addition to and not a limitation of any other provision of the Oklahoma Statutes which grants an exemption from attachment or execution and every other species of forced sale for the payment of debts. This provision shall be effective for retirement plans and arrangements in existence on, or created after April 16, 1987.[93]

Assuming for purposes of this discussion that the Solo 401k is included in Debtor's bankruptcy estate under § 541, we must examine § 1(A)(20) of title 31 to determine whether the Traditional IRA Rollover funds are exempt from Debtor's estate.  In interpreting the statute, the Court must "determine legislative intent through the 'plain and ordinary meaning' of the statutory language."[94] "Generally, Oklahoma case law has construed and applied the exemptions in a reasonably limited matter [sic]."[95]  In *In re Adams*, the Oklahoma Supreme Court recently addressed § 1(A)(20) of title 31 and broke the analysis into two parts: whether the property is 1) a retirement plan or arrangement; and 2) qualified for tax exemption or deferment purposes.[96]  Although not addressed in *In re Adams*, this Court will also be required to consider the effect of the Uniform Fraudulent Transfer Act on the claimed exemption.

The Solo 401k, as a defined contribution profit-sharing plan, falls with the statute's definition of a "retirement plan or arrangement."  Such plans are within the statute's enumerated list of covered arrangements.  The second prong of the *In re Adams* test requires "[f]or a plan to

---

[93] Okla. Stat. tit. 31, § 1(A)(20) (emphasis added). All further textual references to this statute will only refer to the title and section number.
[94] *In re Adams*, 2020 OK 80, ¶ 11, 474 P.3d 346, 350.
[95] *Id*. at ¶ 13, 474 P.3d at 350–51 (citing *In re McKaskle*, 117 B.R. 671, 674 (Bankr. N.D. Okla. 1990)). *See also Sec. Bldg. & Loan Ass'n of Okla. City v. Ward*, 50 P.2d 651, 657 (Okla. 1935) ("The purposes of the exemption statute are to prevent improvident debtors from becoming subjects of charity by preserving to them sufficient definitely classified property that they may maintain a home for themselves, and to prevent inconsiderate creditors from depriving them of the necessities of life. It is the duty of the court to so apply these exemption statutes as to accomplish these purposes.").
[96] *In re Adams*, 2020 OK 80, ¶ 14, 474 P.3d at 351.

23

'qualify' under the I.R.C., it must comply with the provisions of I.R.C. Section 401."[97]  This is identical to the requirement discussed *supra* under the first prong of the *Greening Donald* test to determine whether the Solo 401k is property of the estate.[98]  Once again, the Court must deny summary judgment until a full record can be developed after a trial on the issue of whether the Solo 401k was operated in compliance with I.R.C. § 401(a).  The same applies to any issues regarding the application of the Uniform Fraudulent Transfer Act, which by definition brings the issue of Debtor's intent into play.  These determinations involve genuine disputes of material fact that prevent judgment for Trustee on the issue of whether the Traditional IRA Rollover funds in the Disputed Account are exempt under Oklahoma law.

## II.    The Roth IRA Rollover funds and the 401k Loan Proceeds are non-exempt assets of Debtor's estate.

### 1.    *The Roth IRA Rollover funds and 401k Loan Proceeds are property of Debtor's estate.*

Debtor engaged in two separate transactions that caused funds to be distributed to him prior to the Petition Date: 1) the Roth IRA Rollover and the 401k Loan.  While initially taking the position that these funds were protected by an exemption under Oklahoma law, Debtor now suggests they never became part of the estate under § 541(c)(2) because they were held in the Disputed Account on the Petition Date.  The Court need look no further than the plain language of § 541(c)(2) to conclude that the funds, having been distributed to Debtor prior to the Petition Date, were not excluded from the estate under § 541(c)(2).

As discussed *supra*, for funds not in an ERISA-covered account, the Court looks to §§ 326-28 of Title 60 as the "applicable nonbankruptcy law" for exclusion under § 541(c)(2).[99]  Funds

---

[97] *Id*. at ¶ 22, 474 P.3d at 352.
[98] *See supra* notes 77-82 and accompanying text.
[99] *See supra* notes 64-71 and accompanying text.

24

held *in* a plan or account qualified for tax deferral under I.R.C. § 401 will trigger the protections of § 326. But if funds have been withdrawn or distributed from a pension or 401(k) plan, they are no longer subject to any restrictions on alienation contained in the plan documents and cannot qualify for exclusion under § 541(c)(2).[100] As the Bankruptcy Appellate Panel for the First Circuit recently noted:

> "[F]unds held in retirement plans that are subject to the anti-alienation provisions of [ERISA] are within the purview of the § 541(c)(2) exclusion and cannot be administered by the trustee[.]" *In re O'Neal*, 462 B.R. 324, 331 (Bankr. D. Mass. 2011) (discussing *Patterson*). **That is not the case for funds distributed, loaned, or withdrawn from an ERISA-qualified retirement account pre-petition as they lose their anti-alienation protection and become estate property.** *See In re Weinhoeft*, 275 F.3d 604, 606 (7th Cir. 2001) ("[C]ash on hand is not shielded from creditors' claims by § 541(c)(2) ...."); *Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Colville*, 16 F.3d 52, 55-56 (3d Cir. 1994) (holding that ERISA's anti-alienation provisions applied only to actions against the plan, not the distributions to the beneficiary); *Velis v. Kardanis*, 949 F.2d 78, 83 (3d Cir. 1991) (stating, pre-*Patterson*, to the extent of distributions made from the pension plans to the debtor or for his benefit, "there are no enforceable restrictions which preclude treating those distributions as part of the estate of the debtor"); *Feldman v. People First Fed. Credit Union (In re White)*, Adv. Pro. No. 18-0131, 2019 WL 2067360, at *1 (Bankr. E.D. Pa. May 8, 2019); *In re Whittick*, 547 B.R. [628] at 637 [Bankr. D.N.J. 2016] ("[S]ection 541(c)(2) only excludes from property of the estate the trust assets themselves, not the distributions.") (citation omitted); *In re McDonald*, No. 03-12019C, 2003 WL 23211570, at *2 (Bankr. M.D.N.C. Sept. 27, 2003); *Eisenberg v. Houck (In re Houck)*, 181 B.R. 187, 190 (Bankr. E.D. Pa. 1995).[101]

These principles apply equally to non-ERISA-qualified retirement accounts.[102]

---

[100] *See Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078, 1081 (10th Cir. 1994) (en banc) ("ERISA section 206(d)(1) protects ERISA-qualified benefits from garnishment only until paid to and received by plan participants or beneficiaries."); *NCNB Fin. Servs., Inc. v. Shumate*, 829 F. Supp. 178 (W.D. Va. 1993) (once the line of actual receipt is crossed, ERISA no longer protects funds originating in a qualified pension plan*), aff'd sub nom. Nationsbank of N.C., N.A. v. Shumate*, 45 F.3d 427 (4th Cir. 1994); *In re McDonald*, No. 03-12019C, 2003 WL 23211570, at *2 (Bankr. M.D.N.C. Sept. 27, 2003) ("Once removed from the pension or 401(k) plan and paid to the employee, the funds no longer are subject to the restriction on alienation contained in the plan documents, and hence not within the exception created by § 541(c)(2).").

[101] *In re Brown*, 614 B.R. 416, 422-23 (1st Cir. BAP 2020) (emphasis added).

[102] Section 541(c)(2) only requires that a restriction on transfer be enforceable under "applicable nonbankruptcy law." It does not require that law to be ERISA.

### a.  The Roth IRA Rollover funds

The IRS defines an "individual retirement account," or IRA, as "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries," if the written governing instrument creating the trust meets certain criteria.[103]  A Roth IRA is a variety of IRA that must be designated as such upon its creation, and follows its own specific set of operational rules.[104]  The IRS allows participants in eligible retirement plans to move money between tax deferred accounts through "rollover contributions" generally effected by moving funds from one qualified account to another.[105]  Not all retirement accounts have the same rules regarding rollovers; specifically, unlike a traditional IRA, funds in a Roth IRA must be deposited in another Roth IRA to avoid additional penalties, and cannot be deposited into an employer-sponsored 401(k).[106]  The IRS gives taxpayers 60 days from receipt of a distribution to put the funds into a qualified account and avoid taxation.[107]  Failure to do so will be considered an invalid rollover, resulting in a taxable distribution as well as a 10% penalty.[108]

In the absence of a waiver or extension from the IRS, funds that have been distributed from a Roth IRA and not rolled over to another qualified plan within the 60-day window are treated as

---

[103] I.R.C. § 408(a).

[104] *Id*. § 408A. *See also Clark v. Rameker*, 573 U.S. 122, 124 (2014) ("Roth IRAs offer the opposite benefit: Although contributions are not tax-deductible, qualified distributions are tax-free.").

[105] *See* I.R.S. 2021 Pub. 590-A, at 21 ("Generally, a rollover is a tax-free distribution to you of cash or other assets from one retirement plan that you contribute to another retirement plan within 60 days you received the payment or distribution. The contribution to the second retirement plan is called a 'rollover contribution.'").

[106] *See id*. at 44. ("A rollover from a Roth IRA to an employer retirement plan isn't allowed.").

[107] *Id*. ("You can withdraw, tax free, all or part of the assets from one Roth IRA if you contribute them within 60 days to another Roth IRA.").

[108] *See* I.R.S. 2021 Pub. 590-B, at 31 ("If you receive a distribution that isn't a qualified distribution, you may have to pay the 10% additional tax on early distributions[.]").

a taxable distribution to the participant.[109]  Once a distribution has been made, the funds are no longer "in" the Roth IRA, meaning they are no longer in a trust or account that is exempt from taxation under the Internal Revenue Code or subject to its anti-alienation provisions.[110]  Those funds simply constitute "a pot of money that can be freely used for current consumption, not funds objectively set aside for one's retirement."[111]

Debtor acknowledges that the Roth IRA Rollover on January 19, 2021, of $42,033.93 from the E*Trade Roth IRA into the Disputed Account was considered an "invalid rollover" by the IRS.[112]  Because the Solo 401k was not eligible to receive the Roth IRA funds, the transfer was considered a taxable distribution to Debtor as of March 20, 2021, which was 60 days from the original transfer.  As of the Petition Date, the Roth IRA Rollover funds had lost their protected status under I.R.C. § 408A; they were the equivalent of cash sitting in the Disputed Account,

---

[109] I.R.S. 2021 Pub. 590-A, at 21-22 ("In the absence of a waiver, amounts not rolled over within the 60-day period don't qualify for tax-free rollover treatment.  You must treat them as a taxable distribution from either your IRA or your employer's plan."); *In re Campbell*, No. 16-34692-PCM13, 2021 WL 3540424, at *8 (Bankr. D. Or. Aug. 11, 2021) ("T]hose funds lost their exempt status because they were not subsequently deposited into a qualifying tax-exempt account within sixty days of their removal, as is required by § 522(b)(4).").

[110] *See In re Weinhoeft*, 275 F.3d 604, 606 (7th Cir. 2001) ("A pension trust is inalienable no matter how strong the creditor's equitable claim to the money, and funds *not* in pension trusts are alienable no matter how much the debtor would prefer to keep the value out of creditors' hands. The proof of this is the rule that as soon as funds are *withdrawn* from a plan, creditors can reach them freely."); *Velis v. Kardanis*, 949 F.2d 78, 83 (3d Cir. 1991) ("[T]o the extent of distributions made from the pension plans to the debtor or for his benefit, there are no enforceable restrictions which preclude treating those distributions as part of the estate of the debtor."), *accord Guidry v. Sheet Metal Workers Nat. Pension Fund*, 39 F.3d 1078, 1083 (10th Cir. 1994).

[111] *Clark v. Rameker*, 573 U.S. 122, 128-29 (2014) (internal citation omitted). *See also In re Weinhoeft*, 275 F.3d at 606 ("[C]ash on hand is not shielded from creditors' claims by § 541(c)(2), ERISA, or [Illinois state exemption law] in conjunction with § 522(b)(2)(A).").

[112] *See* Debtor's Response, at Docket No. 47-1, at 20.

subject to the unfettered control and discretion of Debtor.  Such funds come into the estate under § 541(a)(1).[113]

Debtor argues that because the Roth IRA Rollover funds were held in the Disputed Account, they were also "in" the Solo 401k trust, and thus should be treated no differently than the Traditional IRA Rollover funds discussed *supra*.[114]  But the Disputed Account and the Solo 401k are not coextensive.  The Disputed Account is not itself a trust; it is a checking account held at Solera Bank created for the purpose of holding assets of the Solo 401k trust.  Simply placing funds in the Disputed Account may have co-mingled trust and non-trust assets, but it is not enough to trigger the protections afforded by the Solo 401k under I.R.C. § 401(a).  In order to qualify for tax exemption under I.R.C. § 401, the Solo 401k is limited in the kinds and amounts of contributions it can receive.[115]  Eligible rollover contributions to a § 401(k) plan are allowed from various types of qualified plans, but not from a Roth IRA.[116]  Nor does Debtor's Adoption Agreement of the Solo 401k allow rollover contributions from a Roth IRA.[117]

---

[113] *See Clark v. Rameker*, 573 U.S. at 128-29; *Guidry,* 39 F.3d at 1083; *Velis*, 949 F.2d at 83; *In re Weinhoeft*, 275 F.3d at 606.

[114] *See supra* Section I.

[115] I.R.C. § 401(a)(16) ("A trust shall not constitute a qualified trust under this section if the plan of which such trust is a part provides for benefits or contributions which exceed the limitations of section 415.").

[116] *Id*. § 415(a)(1)(B) ("A trust which is a part of a []profit-sharing [] plan shall not constitute a qualified trust under section 401(a) if-- . . . (B) in the case of a defined contribution plan, contributions and other additions under the plan with respect to any participant for any taxable year exceed the limitation of subsection (c)."); *id*. § 415(c) (allowing rollover contributions as defined in I.R.C. §§ 402(c), 403(a)(4), 403(b)(8), 408(d)(3), and 457(e)(16)). A Roth IRA is not among the eligible retirement plans that constitute an eligible rollover distribution under that statute. *See id*. §§ 408(d)(3), 402(c)(8)(B) ("If any portion of an eligible rollover distribution is attributable to payments or distributions from a designated Roth account (as defined in section 402A), an eligible retirement plan with respect to such portion shall include only another designated Roth account and a Roth IRA.").

[117] *See* Adoption Agreement, at Docket No. 59-1, at 112 ¶ H6 (allowing direct rollovers from Roth Deferral accounts from other 401(a) or 403(a) qualified accounts, but not participant rollovers from a Roth IRA).

Upon distribution to the Debtor, the Roth IRA Rollover funds no longer enjoyed the protection of the Solo 401k under the Internal Revenue Code.  Having lost the protection of the Solo 401k, none of the elements of § 541(c)(2) are met that would exclude the Roth IRA Rollover funds from the estate.[118]  As of the Petition Date, the Roth IRA Rollover funds were no longer protected by a trust, nor any restrictions on their transfer, and became property of Debtor's bankruptcy estate.  As such, they are subject to administration by the Trustee unless an available exemption applies.

### b.  The 401k Loan Proceeds

Trustee takes the position that the 401k Loan was a "sham" and was a prohibited transaction that caused the entire Solo 401k account to lose its protections under I.R.C. § 401.  I.R.C. § 401(a)(13) states that a qualified plan must provide that benefits under the plan may not be assigned or alienated.[119]  That section also states that "a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit and is exempt from the tax imposed by section 4975 (relating to tax on prohibited transactions) by reason of section 4975(d)(1)."[120]  I.R.C. § 4975 imposes additional taxes on certain prohibited transactions, such as loans between a plan and a disqualified person,[121] but I.R.C. § 4975(d)(1) provides an exemption for

> any loan made by the plan to a disqualified person who is a participant or beneficiary of the plan if such loan—(A) is available to all such participants or beneficiaries on a reasonably equivalent basis, (B) is not made available to highly compensated employees . . . in an amount greater than the amount made available to other employees, (C) is made in accordance with specific provisions regarding

---

[118] *See In re Weinhoeft*, 275 F.3d at 606.
[119] I.R.C. § 401(a)(13).
[120] *Id*.
[121] *Id*. § 4975(c)(1)(B) (definition of prohibited transaction), 4975(e)(2) (definition of disqualified person), 4975(e)(3) (definition of fiduciary).

such loans set forth in the plan, (D) bears a reasonable rate of interest, and (E) is adequately secured.[122]

The Court finds that the terms of the 401k Loan fall within the I.R.C. § 4975(d)(1) exemption for a loan to a disqualified person who is a participant of the plan.  Although Debtor, as a fiduciary of the Solo 401k plan, is considered a disqualified person under I.R.C. § 4975, he is also a participant of the Solo 401k, triggering the exemption.[123]  The 401k Loan was made in accordance with the terms of the Solo 401k plan documents, was limited to $50,000, bears an interest rate based of the published Prime Rate plus 1%, which is an objectively reasonable measurement, and is secured by the residue of Debtor's interest in his account under the Solo 401k plan.[124]  There being no genuine dispute regarding the fairness of the terms of the 401k Loan, the Court finds that the requirements of I.R.C. § 4975(d)(1) are met.[125]  Although the Court may still inquire whether the Solo 401k plan itself was operated in compliance with § 401, as discussed *supra*, the Court finds that the 401k Loan, standing alone, was a legitimate and allowed transaction.[126]

Trustee also suggests that Debtor's intention behind taking the loan was malevolent, but a participant is allowed to take a loan from a qualified 401(k) plan *for any reason*, so Debtor's intent may not be considered.  As the IRS notes:

> As long as a plan provides for loans, the purpose of the loan or the participant's ability to borrow the same amount elsewhere is irrelevant in determining whether

---

[122] *Id*. § 4975(d)(1). *See also* IRM 4.72.11.4.2 (Sept. 21, 2017) (Loans Between Plan and Disqualified Person Who Is a Participant or Beneficiary).

[123] I.R.C. § 4975(d)(1). *See also* Debtor's Ex. 19, Docket No. 47-20, at 8 (Trustee's duties as fiduciary).  I.R.C. § 4975(f)(6) provides exceptions to the exemptions in § 4975(d)(1), however, Trustee does not argue that any of those exceptions applies.  *See In re Rogers*, 538 B.R. 158, 164 (Bankr. N.D. Ga. 2015).

[124] The Court finds no genuine dispute as to any material fact regarding the terms of the 401k Loan.

[125] Trustee's objection focuses on the fact that Debtor is a disqualified person under I.R.C. § 4975, but he does not raise any specific objections to the terms of the 401k Loan.

[126] *See supra* Section I(1)(c).

the loan is permitted, unlike hardship withdrawals, which require a demonstration of need.[127]

The Court rejects Trustee's allegation that Debtor's actions or intentions in the application for or receipt of the 401k Loan are relevant to the legitimacy of the loan.

Debtor appears to acknowledge that funds withdrawn from a tax protected 401(k) plan that are within the possession and control of a debtor when a chapter 7 case is filed, either by distribution or as a loan from the plan to the beneficiary, are property of the bankruptcy estate.[128] The issue before the Court is whether the 401k Loan proceeds were sufficiently within Debtor's possession and control on the Petition Date to make them property of his estate; or whether, as Debtor contends, the funds remained in the Solo 401k trust account and continued to be protected by the terms of the plan documents and I.R.C. § 401 on the Petition Date.

Although the Court could not find any case with the exact fact pattern presented here, the principles involved have been well-trodden.  For example, in *Parks v. FIA Card Servs., N.A. (In re Marshall)*,[129] the Court of Appeals for the Tenth Circuit made it clear that "dominion or control over [loan proceeds] as evidenced by an ability to direct their distribution" indicates an interest of a debtor in property sufficient to bring it into the estate, "even if [debtor was] never in actual possession of the loaned proceeds."[130]  In that case, debtors utilized a balance transfer from one

---

[127] *See* Retirement Plans FAQs regarding Loans, Q&A (4), I.R.S., https://www.irs.gov/retirement-plans/retirement-plans-faqs-regarding-loans (Apr. 27, 2022).
[128] *See* Supplemental Brief of Debtor, at Docket No. 59, at 14 n.51 (quoting *In re Brown*, 614 B.R. 416, 422 (1st Cir. BAP 2020)).  *See also supra* note 100 and accompanying text; *Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251, 1258 (10th Cir. 2008) ("A transfer of loan proceeds (an asset) diminishes the bankrupt's estate."); *In re Friedman*, 220 B.R. 670, 672 (9th Cir. BAP 1998) ("[O]nce [retirement plan funds] were loaned to debtor, they lost their exempt status."); *In re Collin*, 182 B.R. 763, 768–69 (Bankr. N.D. Ohio 1995) ("Upon Debtor's voluntary withdrawal of the funds from her pension plan . . . she gained unrestricted access to the funds and had the ability and control to use them as she pleased. The unrestricted funds lost their exempt status as ERISA qualified funds and the protection of § 541(c)(2).").
[129] 550 F.3d 1251 (10th Cir. 2008).
[130] *Id.* at 1256.

31

credit card to pay another card's balance.  Debtors there argued that the funds never came into their possession, and thus could not have been property of their estate. The court disagreed, applying both a dominion/control test and a diminution of the estate test, to conclude that the debtors obtained an interest in the proceeds loaned from the first creditor, if only fleeting, and then exercised control over the funds by directing those funds be paid to the second creditor.[131]  That the debtors' possession was constructive rather than physical did not affect the court's conclusion.[132]

Both *In re Brown*[133] and *Marchand v. Whittick (In re Whittick)*[134] offer useful applications of these principles.  In both cases, debtors were approved for loans and were issued checks from their exempt pension plans pre-petition, but debtors had not deposited those checks prior to filing bankruptcy.[135]  Debtors in those cases argued that because the checks were never negotiated, the loan proceeds remained in their protected pension accounts on the petition date.  Despite the debtors never taking physical possession of the funds, both courts found that the checks represented a completed distribution of loan proceeds to the debtors, who then obtained sufficient

---

[131] *Id*. at 1257.

[132] *Id*. at 1256-57 n.4 ("At bottom constructive possession is a convenient way to describe a right or ability to control personal property or an interest in it. . . . . *see also* 63C AM. JUR. 2D *Property* § 30 ("One may have possession of [personal property], even in the absence of actual personal custody, if the [property] is under his or her control and in a place where it must have been put by his act or in his or her behalf, or where the [property] is within his or her power in such a sense that he or she can and does command its use.")").

[133] 614 B.R. 416 (1st Cir. BAP 2020).

[134] 547 B.R. 628 (Bankr. D.N.J. 2016)

[135] *In re Brown*, 614 B.R. at 426-27 (loan check issued to debtor and held for 3 weeks prior to filing date was not exempt from estate even though never deposited); *In re Whittick*, 547 B.R. at 632 (loan check issued to and received by the debtor from his retirement account one day prior to his bankruptcy filing was property of the bankruptcy estate even though the check was not cashed until after the bankruptcy filing).

dominion and control over the loan proceeds to cause them to become property of the estate.[136]  In *In re Whittick*, the court found that the approval of the loan, as evidenced by the issuance of the check, transformed funds from an offer of credit to an actual receipt of credit from the issuer.[137]  In *In re Brown*, the court characterized the loan proceeds as a distribution that, upon failure to rollover into another approved account, represented non-exempt funds in the hands of the debtor.[138]

Armed with these principles, the Court concludes that the 401k Loan Proceeds became property of Debtor's estate on the Petition Date.  On May 31, 2021, Debtor executed an application for a loan from the Solo 401k.[139]  That same day, Debtor executed an approval of the 401k Loan as "Plan Administrator" and an acknowledgment as "Participant."[140]  Debtor also executed an irrevocable pledge and assignment of his interest in the Solo 401k as collateral for the 401k Loan.[141] Finally, Debtor executed a promissory note outlining the terms of the 401k Loan, and "for value received" pledged to make payments of the entire $50,000 plus annual interest at 4.5% in equal payments for five years commencing on September 1, 2021, to which an amortization schedule was attached.[142]  Together, the 401k Loan documents indicate that Debtor, as both plan administrator and participant, intended the loan to be completed upon execution and that the full

---

[136] *In re Brown*, 614 B.R. at 426 ("As of the petition date, the loan proceeds that the Debtor attempts to exempt were no longer 'in' one of the tax-exempt funds listed in § 522(d)(12) . . . . the loan proceeds lost their protection when the Debtor failed to roll them over into another eligible fund within 60 days of their distribution to the Debtor."); *In re Whittick*, 547 B.R. at 638 ("loan proceeds . . . became property of the estate when the Debtor borrowed the money out of the fund for nonexempt use.").

[137] *In re Whittick*, 547 B.R. at 638.

[138] *In re Brown*, 614 B.R. at 426.

[139] Debtor's Ex. 28, at Docket No. 47-29 (loan documents), at 2-3.

[140] *Id*. at 4-5.

[141] *Id*. at 6.

[142] *Id*. at 7-9.

$50,000 would come under his immediate control.  In effect, the funds were removed from the Solo 401k trust, although they remained in the Disputed Account.  As such, the funds were no longer subject to the restrictions on alienation provided by the Solo 401k plan documents and I.R.C. § 401.  Once the 401k Loan documents were executed, the entirety of the $50,000 was effectively distributed to Debtor and within his constructive possession and control.  The fact that the funds remained in the Disputed Account does not change this result.  When Debtor caused $1,500 to be withdrawn from the Disputed Account on June 3, 2021, he was exercising his control over the loan proceeds held in the Disputed Account.  The $48,500 401k Loan Proceeds that remained in the Disputed Account on the Petition Date were no longer in any pension or retirement plan that could support an exclusion under § 541(c)(2).  They became property of Debtor's estate.

In an effort to avoid this result, Debtor tries to characterize the 401k Loan as an unexercised line of credit, suggesting that the funds never left the trust until he spent them.  He suggests that he did not have actual possession of the funds, and thus did not gain control over the 401k Loan Proceeds prior to the Petition Date.  Both the 401K Loan documents and our Circuit's case law impugn this conclusion.[143]  Interest on the 401k Loan began to accrue on the entire $50,000 immediately, and an amortization schedule was set for Debtor to repay the loan over 5 years, not, as he suggests, only when he utilized the credit.  This shows a clear intent of Debtor as both plan administrator and participant to effectuate an immediate transfer of funds to Debtor's control.

---

[143] *See id.*; *Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251, 1256 (10th Cir. 2008) ("These courts reason that the debtor, even if never in actual possession of the loaned proceeds, exercises dominion or control over them as evidenced by an ability to direct their distribution.") (adopting majority view). Courts have likewise rejected the theory that unspent loan proceeds should be treated as an unexercised line of credit.  *See In re Whittick*, 547 B.R. at 636 ("The defendants' argument that the loan was not complete, and therefore no interest in the proceeds became property of the estate, until the Debtor cashed the check ignores that the loan was approved prepetition, evidenced by the issuance of the check."); *In re Brown*, 614 B.R. at 426-27 (*citing In re Whittick*)).

Debtor's exercise of that control to remove $1,500 of the funds pre-petition buttresses this conclusion.[144]  The execution of the 401k Loan documents effectively removed $50,000 from the protection of the Solo 401k trust and put those funds in the discretionary control of Debtor.  The 401k Loan Proceeds that remained in the Disputed Account on the Petition Date were not subject to any restrictions on transfer that would remove them from the estate under § 541(c)(2).

> ### 2. The Roth IRA Rollover funds and 401k Loan Proceeds are not exempt from the estate under Oklahoma law.

Debtor's right to an exemption in the Roth IRA Rollover funds and the 401k Loan Proceeds is determined on the Petition Date.[145]  As the Supreme Court of the United States has noted, an exemption applies to "property to which there is under the state law a *present right of exemption*- one which withdraws the property from levy and sale under judicial process."[146]  Exemptions are not extended to "*property which would or might be exempt if some condition not performed were performed*."[147] As discussed *supra*, the applicable Oklahoma exemption law is found in section §1(20) of title 31 of the Oklahoma Statutes.[148]  Applying the test set out in *In re Adams*, the Court must determine whether the Roth IRA Rollover funds or the 401 Loan Proceeds are 1) in "a retirement plan or arrangement" and 2) "qualified for tax exemption or deferment purposes."[149]

---

[144] *See In re Marshall*, 550 F.3d at 1257 ("An ability to control, made manifest, must equate to physical control.").

[145] *In re Crow*, 987 F.3d 912, 921 (10th Cir. 2021) (citing *White v. Stump*, 266 U.S. 310, 313, (1924)).

[146] *White v. Stump*, 266 U.S. at 313 (emphasis added).

[147] *Id*. (emphasis added).

[148] *See supra* Section I(2).

[149] *In re Adams*, 2020 OK 80, ¶ 14, 474 P.3d 346, 351. *See also In re Cella*, 128 B.R. 574, 578 (Bankr. W.D. Okla. 1991) ("It is apparent to the Court that § 1(A)(20) is intended to apply only to retirement funds[.]"). These elements are almost identical to the test applied to an exemption under § 522(b)(C)(3), which the Debtor has chosen not to raise.  *See Clark v. Rameker*, 573 U.S. 122, 131 (2014) ("§ 522(b)(3)(C) requires that funds satisfy not one but two conditions in order to be exempt: the funds must be "retirement funds," and they must be held in a covered account.").

a.  **The Roth IRA Rollover funds**

A Roth IRA, such as Debtor's E*Trade Roth IRA, without question meets both prongs under the Oklahoma exemption statute.[150]  The funds in a Roth IRA are "earmarked for retirement in the ordinary course of the debtor's affairs" and the plan complies with I.R.C. § 401 for purposes of tax exemption.[151] There is no question that *but for* the invalid rollover of the funds from the E*Trade Roth IRA to the Solo 401k, these funds would not have entered Debtor's bankruptcy estate pursuant to § 541(c)(2).

The difficulty lies in the fact that the invalid rollover caused by Debtor's attempt to place the E*Trade Roth IRA funds in the Solo 401k caused a taxable distribution of those funds to Debtor.  Upon distribution to Debtor, the funds were no longer "earmarked for retirement."[152] Nor were they subject to any anti-alienation rules or tax deferment under the Internal Revenue Code.  Courts have uniformly found funds that have been distributed from ERISA protected accounts no longer enjoy its protection.[153] Section §1(20) of title 31 of the

---

[150] *See* Okla. Stat. tit. 31, §1(A)(20) (specifically including Roth individual retirement accounts created pursuant to I.R.C. § 408A); *Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992) ("The Oklahoma statute allows debtors to exempt both IRA's and Keoghs *provided the investments fully qualify for tax deferral treatment under the Internal Revenue Code*.") (emphasis added).

[151] *In re Adams*, 2020 OK 80, ¶ 15, 474 P.3d at 351-52 (citing *In re Sims*, 241 B.R. 467, 471 (Bankr. N.D. Okla. 1999)).

[152] In interpreting the term "retirement funds," the United States Supreme Court counseled: "to determine whether funds in an account qualify as 'retirement funds,' courts should not engage in a case-by-case, fact-intensive examination into whether the debtor actually planned to use the funds for retirement purposes as opposed to current consumption. Instead, we look to the legal characteristics of the account in which the funds are held, *asking whether, as an objective matter, the account is one set aside for the day when an individual stops working*." *Clark v. Rameker*, 573 U.S. at 127 (emphasis added).

[153] *In re Weinhoeft*, 275 F.3d 604, 606 (7th Cir. 2001); *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 39 F.3d 1078, 1081 (10th Cir. 1994) (finding the anti-alienation provisions of ERISA "was not intended to apply to benefits following distribution to and receipt by the beneficiary."); *Trucking Emps. of N.J. Welfare Fund, Inc. v. Colville*, 16 F.3d 52 (3d Cir. 1994); *Velis v. Kardanis*,

36

Oklahoma Statutes, which requires covered funds to be held in a tax qualified retirement arrangement, does not apply to funds effectively held as cash and subject to the full dominion and control of Debtor.[154]  Debtor has not identified any provision that would allow an exemption for the Roth IRA Rollover funds under federal or Oklahoma law.

Debtor insists that the movement of the E*Trade Roth IRA funds was a "mistake," and he should be allowed to seek a waiver from the IRS to move the funds back to a qualified Roth IRA account, thus avoiding the 10% penalty.[155]  In the absence of the automatic stay in this case, he would have already done so.  If no bankruptcy had occurred, this might be a prudent course of action.  The 60-day window for moving the funds into a qualified account expired prior to the Petition Date.  As of the Petition Date, the Roth IRA Rollover funds were sitting unrestricted in the Disputed Account subject to the full control and discretion of Debtor.  They were not being held in any account exempt from taxation under the Internal Revenue Code, and they were not subject to any available exemption under state law.  The fact that Debtor was unaware of his mistake does not alter the result.[156]  Based on these facts, the Court concludes that the Roth IRA

---

949 F.2d 78 (3d Cir. 1991); *In re Campbell*, No. 16-34692-PCM13, 2021 WL 3540424, at *8 (Bankr. D. Or. Aug. 11, 2021) ("If funds are distributed from an exempt retirement fund and not rolled over and deposited into another eligible fund within the prescribed time period, those funds lose their exempt status.") (citing cases).

[154] *See In re Adams*, 2020 OK 80, ¶ 15, 474 P.3d at 351 ("The logical conclusion based on the plain language of the statute is that every interest exempt under Subsection 20 must be a plan or arrangement designated for retirement purposes."); *In re Cella*, 128 B.R. 574, 578 (Bankr. W.D. Okla. 1991) ("It is apparent to the Court that § 1(A)(20) is intended to apply only to retirement funds[.]").

[155] Debtor also suggests that he may have some kind of legal claim against E*Trade for allowing him to execute the invalid rollover.  The Court takes no position on that issue, except to note that it does not affect its analysis of the exempt status of the Roth IRA Rollover funds.

[156] *See Velis v. Kardanis*, 949 F.2d at 82 ("[T]o the extent the assets in these plans have already been distributed to or for the benefit of the debtor, the debtor no longer has available the protections which might otherwise have been accorded under the ERISA statute. Section 541(c)(2) requires recognition of restrictions upon transfer which are enforceable by law; it does not operate to require

Rollover of $42,033.93, transferred from E*Trade account #0106 into the Disputed Account on January 19, 2021, is property of Debtor's estate to which no state law exemption applies and is available for administration by Trustee.  Trustee is entitled to summary judgment on this point.

**b. The 401k Loan Proceeds**

Likewise, the 401k Loan Proceeds are not exempt from the estate under Oklahoma law. Upon distribution of the $50,000 in loan proceeds to Debtor, they were effectively removed from the Solo 401k, even though they remained in the Disputed Account.  Debtor's removal of $1,500 without any restriction or tax consequence confirms this.  Unlike the Solo 401k, the Disputed Account itself was not "a retirement plan or arrangement qualified for tax exemption or deferment purposes under present or future Acts of Congress."[157]  Debtor has pointed to no other provision that would exempt common loan proceeds from his estate.  The 401k Loan Proceeds, in the amount of $48,500, became property of Debtor's estate on the Petition Date, are not subject to any identified exemption under state law, and are available for administration by Trustee. Trustee is also entitled to summary judgment on this point.

**III.    On summary judgment, the Court denies Trustee's objection to Debtor's exemptions based on § 105.**

Trustee has alleged that, despite his timely objection to Debtor's claims of exemption discussed herein, Debtor proceeded to dissipate a large portion of the assets in the Disputed Account.  If true, Debtor's actions would be an egregious violation of the automatic stay imposed in this case under § 362(a)(3) and will hugely complicate Trustee's efforts to administer the

---

non-recognition of transfers which have already occurred, nor does it apply to assets in the possession of the debtor without restrictions.").

[157] Okla. Stat. tit. 31, § 1(A)(20).

property discussed herein.[158]  Trustee argues that § 105 of the Bankruptcy Code gives the Court authority to deny Debtor's claimed exemptions based on these alleged post-petition bad acts.  The Court will not dwell on this issue, given its apparent resolution by the United States Supreme Court in *Law v. Siegel*.[159]  There, the Court noted:

> [Section] 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate. Rather, the statute exhaustively specifies the criteria that will render property exempt. See § 522(b), (d). . . .

> . . . The Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions.

> . . . [Siegel] suggests that those decisions reflect a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct. For the reasons we have given, the Bankruptcy Code admits no such power. . . . But *federal law* provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code.[160]

Despite the rather clear statement provided by the Court, Trustee insists that the holding of *Law v. Siegel* should be limited to Debtor's pre-petition bad faith.  He makes a rather circular argument that if Trustee eventually prevails on his objections, thus denying Debtor's exemptions, then Trustee will be forced to pursue avoidance claims to recover the dissipated funds.  But if Trustee will eventually prevail on his objections on their merits, what is the purpose of the Court denying them under § 105?  Trustee would likely have to recover the funds through avoidance actions in either case.

Trustee cites *Wells Fargo Bank, N.A. v. Jimenez*,[161] for the proposition that a court may deny an exemption if a debtor exhibits bad faith by dissipating assets after an exemption has been

---

[158] § 362(a)(3) ("a petition filed under section 301 . . . operates as a stay, *applicable to all entities*, of—(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]") (emphasis added).
[159] 571 U.S. 415 (2014).
[160] *Id*. at 423–24 (internal citations omitted).
[161] 406 B.R. 935 (D.N.M. 2008).

claimed but before the court has ruled on the exemption.[162]   The court in *Jimenez* addressed whether a debtor had standing to object to a bank's freeze on her account during the period after she had claimed the account exempt, but before the court had issued a ruling on the exemption. The court found that until it rules on an exemption, the contested asset remains property of the estate—not the debtor.  It concluded that the debtor had suffered no injury by being deprived use of an asset that still belonged to her estate, and she therefore lacked standing to prosecute a violation of the automatic stay.[163]   This Court finds nothing incorrect or unusual about the ruling in *Jimenez*; nor does it find it helpful. The *Jimenez* court did not address a debtor's right to an exemption in any way.  Even if Trustee believes he can tease out a few nuggets buried in its language, they would be considered dicta and pre-date the Supreme Court's clear holding in *Law v. Siegel*.

Given the clear pronouncements of *Law v. Siegel*, the Court rejects Trustee's call to consider Debtor's actions in this case as a basis to deny any exemptions that may be available to him under state or federal law.  At least one court, when rejecting the denial of an exemption upon a finding of civil contempt for a debtor's post-petition conduct, agrees:

> Sale of the exempt property to satisfy a damages award for a debtor who was found in civil contempt would amount to the Bankruptcy Court either withdrawing the homestead exemption or creating an additional exception to § 522's exemptions. Because the statute does not contain such a wrongful conduct exception to section 522—even on a finding of contempt of court—the Court would be creating an additional exception to the existing exemptions—or at the very least, surcharging the exemption—thereby running afoul of *Law's* pronouncements in *dicta*.[164]

---

[162] *See* Motion, Docket No. 31, at 18-20; Trustee's Reply, Docket No. 50, at 9.

[163] *Jimenez*, 406 B.R. at 941.

[164] *Springel v. Prosser (In re Prosser)*, No. 2006-30009, 2018 WL 3041067, at *7 (D.V.I. June 19, 2018). *See also McDonnell v. Gilbert (In re Gilbert)*, 642 B.R. 687, 706 (Bankr. D.N.J. 2022) ("[I]t is not the purview of this court to create bad faith exceptions to the protections that Congress has granted retirement funds both inside and outside of bankruptcy.").

The Court shares Trustee's concerns if Debtor has, in fact, depleted estate assets, but the Court will not use § 105 to deny any exemptions in this case. To the extent Trustee needs to recover assets of the estate that have been dissipated by the Debtor, the Code gives him an arsenal of tools to do so.

### Conclusion

Trustee's Motion is granted in part and denied in part. The Court finds genuine disputes of material fact prevent judgment on the issue of whether the $156,272.51 in Traditional IRA Rollover funds in the Disputed Account are property of the estate or are subject to exemption under Oklahoma law. Summary judgment on this issue is denied. The Court further concludes that the Roth IRA Rollover of $42,033.93, transferred from E*Trade account #0106 into the Disputed Account on January 19, 2021, is property of Debtor's estate to which no state law exemption applies. Trustee is granted summary judgment on this issue. Finally, the 401k Loan Proceeds in the Disputed Account on the Petition Date, in the amount of $48,500, are property of Debtor's estate to which no state law exemption applies. Trustee is also granted summary judgment on this issue.

A separate order consistent with this Memorandum Opinion is entered concurrently herewith.

DATED this 9th day of February, 2023.

BY THE COURT:

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

7771.5

41