Filed/Docketed
Nov 07, 2023

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

IN RE:

**DAIMON WILLIAM JACOBS,**

**Debtor.**

**Case No. 21-10658-M
Chapter 7**

**MEMORANDUM OPINION**

*"If at first you don't succeed, try, try again."*[1]

No one likes to lose. When it comes to summary judgment, rarely do the parties take a second, let alone a third, bite at the apple; most judges, this one included, think one try is enough. In this case, however, both parties, having lost part of the battle not only in their first, but also the ***second*** summary judgment skirmish, have found what they hope is another path to victory or partial victory at least. Only one is correct. The following conclusions of law are made pursuant to Federal Rules of Bankruptcy Procedure 7056 and 9014.

**Procedural Posture**

Before the Court is the Trustee's Motion for Partial Summary Judgment on Trustee's Objection to Debtor's Amended Claim of Exemption Relative to a "Solo 401(k): Solera Bank Account Ending in 0319" (the "Motion"),[2] filed on September 6, 2023, by Patrick J. Malloy, III, the Chapter 7 Trustee assigned to this case ("Trustee"). No response was filed on behalf of Daimon William Jacobs, Debtor herein ("Debtor"). As of September 28, 2023, this matter was taken under advisement.

---

[1] William Edward Hickson, *Oxford Dictionary of Quotations* Oxford University Press, p. 251 (3rd ed. 1979).

[2] Docket No. 146.

**Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[3] and venue is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  The allowance or disallowance of exemptions from property of the estate is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(B).  This Court has jurisdiction and authority to enter its findings of fact, conclusions of law, and judgment.

**Summary Judgment Standard**

The United States Court of Appeals of the Tenth Circuit has held that

> Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* Put differently, "[t]he question . . .  is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quotation omitted). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quotation omitted).[4]

The Court will apply this standard to the Motion.

**Background**

This Memorandum Opinion relies upon a previous opinion issued by the Court in this matter granting and denying summary judgment in part and making various findings of fact

---

[3] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.
[4] *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013).

("*Jacobs I*").[5]  The Court incorporates the facts found in *Jacobs I* herein by this reference and need not repeat them. In *Jacobs I*,  the Court determined that it could not make a summary determination whether certain funds held in an account at Solera Bank (i.e., the Disputed Account) were property of the Debtor's bankruptcy estate.[6]  The Court also found that specific funds in the Disputed Account, referred to as the Roth IRA Rollover funds and the 401k Loan Proceeds (collectively, the "Distributions"), had been distributed to Debtor prior to the Petition Date.[7]  The Court determined that, regardless of the exemption status of the Disputed Account, the Distributions are property of Debtor's estate and not protected by the state exemption law cited by Debtor in his original Schedule C, granting summary judgment to Trustee on those issues.[8]

Undaunted, on March 2, 2023, Debtor filed a first Amended Schedule C, in which he claimed an exemption for the entire Disputed Account, including the Distributions, under § 522(b)(3)(C) of the Bankruptcy Code (the "First Amended Exemption Claim").[9] In response, the Trustee again sought summary judgment, arguing that Oklahoma law pre-empted Debtor from making the First Amended Exemption Claim.[10] On May 11, 2023, the Court entered an Order Denying Motion for Summary Judgment ("*Jacobs II*"),[11] finding that Trustee's various objections

---

[5] *In re Jacobs*, 648 B.R. 403 (Bankr. N.D. Okla. 2023), at Docket No. 61 [hereinafter "*Jacobs I*"]. The Court's findings of fact were made pursuant to Fed. R. Civ. P. 56, made applicable to this matter by Fed. R. Bankr. P. 7056 & 9014(c).

[6] *Jacobs I*, 648 B.R. at 411-19.  All defined terms in *Jacobs I* are given the same meaning in this Memorandum Opinion, unless specifically stated herein.

[7] *See id*. at 424 ("Because the Solo 401k was not eligible to receive the Roth IRA funds, the transfer was considered a taxable distribution to Debtor as of March 20, 2021, which was 60 days from the original transfer."); *id*. at 428 ("Once the 401k Loan documents were executed, the entirety of the $50,000 was effectively distributed to Debtor and within his constructive possession and control.").

[8] *Id*. at 422-31.

[9] Docket No. 77.

[10] Docket No. 95.

[11] Docket No. 97 [hereinafter "*Jacobs II*"].

were not warranted by existing law.  On June 20, 2023, Debtor filed a second Amended Schedule C, in which he again claimed all funds in the Disputed Account as exempt under § 522(b)(3)(C) (the "Second Amended Exemption Claim").[12]  In an effort to comply with the Court's service requirements, on August 8, 2023, Debtor filed a third Amended Schedule C, in which he repeated his claim that all funds in the Disputed Account are exempt under § 522(b)(3)(C) (the "Third Amended Exemption Claim").[13]  On August 25, 2023, Trustee filed a timely objection to the Third Amended Exemption Claim (the "Objection"), in which he renews his objection to the exemption of the entirety of the Disputed Account.[14]  Trustee subsequently filed the Motion, in which he seeks partial summary judgment regarding Debtor's claim of exemption of the Distributions.  In the Motion, Trustee includes a section designated "statement of uncontroverted facts."[15]  Trustee does not make any allegation or argument that the facts presented in the Motion differ in substance from those found by the Court in *Jacobs I,* or that the Court should reconsider its findings made there.[16]

## Conclusions of Law

To review, in *Jacobs I*, the Court found that the Distributions are property of the Debtor's bankruptcy estate.[17]  That legal conclusion is unaffected by the Debtor's filing of amended schedules.  The Court also found that state law did not provide a valid exemption from the estate

---

[12] Docket No. 107.

[13] Docket No. 140.

[14] Docket No. 142.

[15] Docket No. 146, at 3-4 ¶ II.

[16] In the Motion, Trustee included a single factual allegation not addressed in *Jacobs I*.  At Docket No. 146, at 5 ¶ II(9), Trustee alleges Debtor made post-petition transfers of funds from the Disputed Account.  Because the Motion only seeks judgment on the issue of exemptions, the Court finds no reason to address Debtor's post-petition actions in this opinion.

[17] *Jacobs I*, 648 B.R. at 403, 422-29.

for those funds.[18]  The only issue before the Court today is whether, as of the Petition Date, the Distributions were exempt under § 522(b)(3)(C) of the Bankruptcy Code.  In the absence of a valid exemption, the assets will be available for administration by Trustee.[19]

A debtor's right to an exemption in property is determined on the date of filing the petition.[20] State and federal exemptions apply to property for which there is a *present right* of exemption on the petition date.[21]  Exemptions do not protect "*property which would or might be exempt if some condition not performed were performed*."[22]  In *Jacobs II*, this Court discussed the availability of federal exemptions for all debtors for certain retirement funds.[23]  For debtors that claim federal exemptions under § 522(b)(2) and (d), the exemption is found in § 522(d)(12).  For debtors otherwise limited to claiming exemptions under state law, as in this case, the exemption is found in § 522(b)(3)(C).  Both sections provide for an exemption for

> retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.[24]

To qualify for an exemption under § 522(b)(3)(C), the U.S. Supreme Court, in *Clark v. Rameker*, required funds to meet two conditions:  1) they must be "retirement funds"; and 2) they must be

---

[18] *Id*. at 429-31.

[19] *See In re Whittick*, 547 B.R. 628, 638 (Bankr. D.N.J. 2016) ("[I]f not excluded from property of the estate by section 541(c)(2), the Debtor may only protect the asset if an exemption applies."); *In re Brown*, 614 B.R. 416 (1st Cir. BAP 2020).

[20] *In re Crow*, 987 F.3d 912, 921 (10th Cir. 2021) (citing *White v. Stump*, 266 U.S. 310, 313 (1924)); *Mansell v. Carroll*, 379 F.2d 682, 684 (10th Cir. 1967) ("In a bankruptcy proceeding the determination of what property is exempt is made as of the date of filing[.]"); *Jacobs I*, 648 B.R. at 421 n.91.

[21] *White v. Stump*, 266 U.S. at 313.

[22] *Id*. (emphasis added); *Myers v. Matley*, 318 U.S. 622, 626 (1943) (quoting *White v. Stump*).

[23] *Jacobs II*, at *3-*5. *See also Clark v. Rameker*, 573 U.S. 122, 124 n.1 (2014); *In re Chaudury*, 581 B.R. 279, 285 (Bankr. M.D. Tenn. 2018) ("The net effect is that, regardless of whether a state opts in or out of the rest of the federal exemptions, retirement funds have a special exempt status under the Bankruptcy Code.").

[24] § 522(b)(3)(C), (d)(12).

held in an account exempt from taxation under one of the enumerated Internal Revenue Code sections.[25]   The Bankruptcy Code does not define the term "retirement funds" as used in § 522(b)(3)(C).  The Supreme Court tells us the term is "properly understood to mean sums of money set aside for the day an individual stops working."[26]   Whether funds meet this definition requires an objective inquiry; courts must "look to the legal characteristics of the account in which the funds are held, asking whether, as an objective matter, the account is one set aside for the day when an individual stops working."[27] The Supreme Court identified three legal characteristics of ordinary or "quintessential" retirement funds:  1) account holders can make regular additional contributions to the accounts over time; 2) account holders are under no obligation to withdraw the funds before a certain age;[28] and 3) account holders incur a penalty to withdraw funds, with narrow exceptions, prior to age 59 1/2.[29]

The Bankruptcy Code provides additional guidance regarding funds that have been distributed or transferred from a fund or account that would otherwise qualify for exemption under § 522(b)(3)(C):

> (4) For purposes of paragraph (3)(C) and subsection (d)(12), the following shall apply:
>
>         . . . .
>
> (C) A direct transfer of retirement funds from 1 fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986, under section 401(a)(31) of the Internal Revenue Code of

---

[25] *Clark v. Rameker*, 573 U.S. at 131; *In re Lerbakken*, 949 F.3d 432, 435 (8th Cir. 2020).

[26] *Clark v. Rameker*, 573 U.S. at 127.

[27] *Id*.

[28] The Court did not address the required minimum distribution based on age of the account holder of a traditional IRA, but was instead addressing features of an inherited IRA, which requires the inheriting account holder to gradually exhaust the account regardless of their own age (citing §§ 408(a)(6),  401(a)(9)(B); 26 CFR § 1.408–8 (Q–1 and A–1(a) incorporating § 1.401(a)(9)–3 (Q–1 and A–1(a))).

[29] *Clark v. Rameker*, 573 U.S. at 128. *See also In re Lerbakken*, 949 F.3d at 435.

1986, or otherwise, shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such direct transfer.

(D)(i) Any distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986 or that is described in clause (ii) shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such distribution.

(ii) A distribution described in this clause is an amount that--

(I) has been distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986; and

(II) to the extent allowed by law, is deposited in such a fund or account not later than 60 days after the distribution of such amount.[30]

These subsections tell us that exempt retirement funds that are 1) *directly transferred* from one eligible fund to another eligible fund;[31] or 2) *distributed* from an eligible fund and then subsequently rolled over and deposited into another eligible fund within sixty days after the *distribution* do not "cease to qualify for exemption under paragraph (3)(C) . . . by reason of such [direct transfer or distribution]."[32]  As one court has noted,

[Subsections 522(b)(4)(C) & (D)] address direct transfers and rollover distributions (sometimes referred to as "indirect transfers") from retirement accounts. Consistent with the tax treatment of direct transfers between trustees, subsection (b)(4)(C) states that a direct transfer of retirement funds between tax exempt accounts does not affect the exemption under subsections (b)(3)(C) and (d)(12). Similarly, a properly rolled-over distribution from a retirement account does not affect the exemption of the distribution under subsections (b)(3)(C) and (d)(12). Therefore, retirement funds that are properly transferred via direct transfer or a tax-free rollover distribution do not cease to qualify for exemption by reason of such transfer or distribution. *Conversely, this implies that if a direct transfer or rollover*

---

[30] § 522(b)(4)(C) – (D).

[31] § 522(b)(4)(C).

[32] § 522(b)(4)(C) – (D).  *See also In re Sullivan*, 596 B.R. 325, 333 (Bankr. N.D. Tex. 2019) ("Applying § 522(b)(4)(D)(ii) in context and in its place in the overall statutory scheme, it is apparent that under federal law, Congress intended to extend the exemption protection to distributions *only to the extent such distributions are deposited into another eligible fund within sixty days after such a distribution*. If the funds are not deposited into another eligible fund within sixty days after distribution, the exemption protection ceases." (emphasis added) (footnotes omitted)).

7

*distribution does not comply with the applicable IRC provisions "to the extent allowed by law," the funds may cease to qualify for exemption from the bankruptcy estate.*

. . .

[I]t is clear from the language of § 522(b) that funds from an IRA are exempt from the bankruptcy estate under federal law to the extent that they are exempt from taxation under the applicable sections of the IRC. For example, paragraph (4)(C) states that a direct transfer of retirement funds from one tax exempt retirement account to another does not disqualify the funds from exemption from the bankruptcy estate. This is consistent with the fact that such direct transfers are tax free. A close reading of subsection (b)(4)(D) renders a similar conclusion regarding the exemption of distributions out of a retirement account: a distribution out of a tax exempt retirement account does "not cease to qualify for exemption" from the bankruptcy estate if (1) it is rolled over in accordance with § 402(c) of the IRC or (2) to the extent allowed by law, is rolled over into a tax exempt retirement account within 60 days. In other words, if the distribution is exempt from taxation, it is exempt from the bankruptcy estate. [33]

With these principles in hand, the Court will proceed to address the Distributions at issue in this case.

### A.  The Roth IRA Rollover funds

As noted in *Jacobs I*, the Roth IRA Rollover funds were distributed to Debtor as the result of an invalid pre-petition rollover.[34]  Debtor set the ball in motion by executing a transfer of funds from the E*Trade Roth IRA, which was a "fund or account that is exempt from taxation under section  . . . 408A."[35]  Those funds were directed by Debtor to be deposited into the Disputed Account of the Solo 401k, *which was not qualified to receive a transfer or rollover contribution from a Roth IRA.*[36]  When the funds were not deposited into a *qualified* account within 60 days

---

[33] *In re Patrick*, 411 B.R. 659, 665-67 (Bankr. C.D. Cal. 2008) (emphasis added) (footnotes omitted).

[34] *Jacobs I*, 648 B.R. at 424 n.112.

[35] *Id*. at 409 n.23; § 522(b)(4)(C); I.R.C. § 408A (Roth IRAs).

[36] *See Jacobs I*, 648 B.R. at 424-25 nn.115-17.

8

after removal from the E*Trade Roth IRA, the funds lost their protected status under I.R.C. § 408A, and the distribution became taxable to Debtor with a corresponding 10% penalty.[37]

Once this taxable distribution took place, the Roth IRA Rollover funds no longer satisfied the essential characteristics of retirement funds as outlined in *Clark v. Rameker*.  Despite being held in the Disputed Account, the funds were freely accessible to Debtor for current consumption without further taxation, penalty, or restriction, and were no longer objectively "sums of money set aside for the day an individual stops working."[38]  Based on the analysis of *Clark v. Rameker*, the Roth IRA Rollover funds do not qualify as retirement funds and are not exempt from Debtor's estate under § 522(b)(3)(C).

Nor do subsections 522(b)(4)(C) or (D) provide any solace to Debtor.  Although the Roth IRA Rollover funds facially meet the test of § 522(b)(4)(C) as being a "direct transfer of retirement funds" from a "fund or account that is exempt from taxation under section  . . . 408A," that is only half the battle.  Subsection 522(b)(4)(C) only operates if the transferred funds otherwise meet the requirements of § 522(b)(3)(C).  In other words, if the retirement funds are *in a tax exempt fund under § 522(b)(3)(C)* on the petition date, they "shall not cease to qualify for exemption" simply

---

[37] *Id*. at 423 n.109; I.R.C. §§ 402(c)(1), (3), 408(d)(3) (the "60-day rollover rule").  *See also In re Rudd*, No. 12-08130-8-JRL, 2013 WL 2684541, at *4 (Bankr. E.D.N.C. June 12, 2013) ("It is clear from these references that distributions made pursuant to the 60–day rollover rule retain their status as exempt from the bankruptcy estate under federal and state law."); *Bohner v. C.I.R.*, 143 T.C. 224, 227–28 (2014) ("A rollover contribution is any amount paid or distributed out of an IRA or individual retirement annuity to the individual for whose benefit the account or annuity is maintained if the entire amount received is *paid into an eligible retirement plan* no later than 60 days after receipt." (emphasis added) (citing I.R.C. § 408(d)(3)(A)(ii)) (finding distribution taxable upon transfer to fund that did not accept rollovers, and thus was not "an eligible retirement plan"); *Schoof v. C.I.R.*, 110 T.C. 1, 7 (1998) ("Generally, distributions from qualified retirement plans are includable in the distributee's income in the year of distribution as provided in section 72. An exception exists if the distribution proceeds are rolled over into *an eligible retirement plan* or an IRA within 60 days of the distribution." (emphasis added) (citations omitted)).

[38] *Clark v. Rameker*, 573 U.S. at 127. As discussed in *Jacobs I*, these are the exact characteristics that make the funds part of Debtor's bankruptcy estate.  *See Jacobs I,* 648 B.R. at 423-24.

because they were recently transferred from another tax exempt fund.[39]  Similarly, § 522(b)(4)(D)

states a distribution that would otherwise qualify as retirement funds *in a tax exempt fund under*

*§ 522(b)(3)(C)* will not "cease to qualify for exemption" simply by reason of such distribution, if

the distribution meets various requirements.[40] Here, the Roth IRA Rollover funds do not meet the

basic requirements for exemption under § 522(b)(3)(C), and nothing in § 522(b)(4)(C) or (D) can

alter that result.  Because the Roth IRA Rollover funds were neither directly transferred to an

eligible fund, nor subsequently rolled over by Debtor into an eligible fund within the required time

frame, neither § 522(b)(4)(C) or (D) apply.[41]  Trustee is entitled to partial summary judgment

finding the Roth IRA Rollover funds are not exempt from the estate under §522(b)(3)(C).

### B.   401k Loan Proceeds

Likewise, the 401k Loan Proceeds are not exempt under § 522(b)(3)(C).  The 401k Loan

Proceeds cannot meet the Court's definition of retirement funds as expressed in *Clark v Rameker*.

The 401k Loan Proceeds were not "sums of money set aside for the day [Debtor] stops working;"[42]

---

[39] § 522(b)(4)(C).

[40] § 522(b)(4)(D).

[41] Courts confronted with similar invalid rollover distributions have reached the same result.  *See In re Campbell*, No. 16-34692, 2021 WL 3540424, at *8 (Bankr. D. Or. Aug. 11, 2021) (where debtor withdrew funds from an exempt retirement account, those funds lost their exempt status when not rolled over and deposited into an eligible account); *In re Sullivan*, 596 B.R. 325, 333 (Bankr. N.D. Tex. 2019) (funds distributed from an exempt retirement fund and not rolled over and deposited into another eligible fund within the prescribed time period lose their exempt status, discussing § 522(b)(4)(C) and (D)); *In re Kane*, No. 99-02153, 1999 WL 33490225, at *5 (Bankr. D. Idaho Nov. 24, 1999) ("A debtor's election on how to handle his or her assets may unintentionally waive protections otherwise provided by the Code or state law.") (debtor voluntarily liquidated protected retirement funds immediately pre-petition; a check was cut to debtor but never deposited elsewhere; court found debtor's action triggered a tax liability and loss of exemption for funds); *In re Merillat*, No. 13-54410, 2014 WL 1846105 (E.D. Mich. May 8, 2014) (agreeing with *Kane*) (debtor took voluntary distribution of exempt retirement funds prepetition via check but had not deposited same as of petition date).

[42] *Clark v. Rameker*, 573 U.S. 122, 127 (2014).

they were instead a "pot of money that [could] be freely used for current consumption."[43]   Upon the execution of the 401k Loan documentation, the entire $50,000 principal of the 401k Loan was considered distributed to Debtor, and Debtor held unfettered, unrestricted access to those funds.[44] Debtor's unrestricted right to the $48,500 in 401k Loan Proceeds that remained in the Disputed Account on the Petition Date became property of Debtor's estate.[45]   Even though the funds remained in the Disputed Account, Debtor's access to the 401k Loan Proceeds was no longer restricted by any rule, contract, penalty, or additional tax consequence such that it would trigger protection under § 522(b)(3)(C).   Nor did Debtor take any action under the 60-day rollover rule that would trigger any exemption rights under § 522(b)(4).[46]   Trustee is also entitled to partial summary judgment finding that the 401K Loan Proceeds are not exempt from the estate under §522(b)(3)(C).

## Conclusion

Trustee's Motion is granted.   The Court finds the Roth IRA Rollover of $42,033.93, transferred from E*Trade account #0106 into the Disputed Account on January 19, 2021, is property of Debtor's estate to which no federal exemption applies. Trustee is granted summary judgment on this issue. The Court further finds the 401k Loan Proceeds in the Disputed Account on the Petition Date, in the amount of $48,500, are property of Debtor's estate to which no federal exemption applies. Trustee is also granted summary judgment on this issue.

---

[43] *Id.* at 128.

[44] *Jacobs I*, 648 B.R. at 428. *See also In re Whittick*, 547 B.R. 628, 632 (Bankr. D.N.J. 2016) (discussing contingent right of debtor in loan proceeds where loan was completed pre-petition, even if receipt of funds not exercised until post-petition).

[45] *See Jacobs I*, at 648 B.R. at 425-29.

[46] *See supra* note 37; *In re Brown*, 614 B.R. 416, 425-27 (1st Cir. BAP 2020) (exemption denied where uncashed disbursement check from debtor's 401(k) account was not deposited into a tax-exempt account with 60 days).

A separate order consistent with this Memorandum Opinion is entered concurrently herewith.[47]

Dated this 7th day of November, 2023.

BY THE COURT:

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

---

[47] To avoid any doubt, the Court notes that its corresponding order will be interlocutory, and not currently subject to appeal, because it does not dispose of all issues related to the Disputed Account.