**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

IN RE:

**DAIMON WILLIAM JACOBS,**

        **Debtor.**

**Case No. 21-10658-M**
**Chapter 7**



Filed/Docketed
Aug 29, 2024

**MEMORANDUM OPINION**

*Truth will always be truth, regardless of lack of understanding, disbelief or ignorance.*[1]

    We have now reached the fourth and (hopefully) ultimate chapter of what is beginning to feel like a Sisyphean saga; in other words, the Court is prepared to issue a final and appealable order in this protracted and enduring matter. After three rounds of summary judgment motions and orders, the Court held an evidentiary hearing on the merits of the issues remaining before it: whether an account holding debtor's retirement funds is property of his bankruptcy estate, and if so, whether it is exempt from collection and distribution by the bankruptcy trustee under state or federal law.  Having reached a decision, the Court is ready to push the rock up the hill one final time.  The following findings of fact and conclusions of law are made pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

**Jurisdiction**

    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[2]  Reference to the Court of this matter is proper pursuant to

---

[1] *W. Clement Stone Quotes*, BrainyQuote, https://www.brainyquote.com/quotes/ w_clement _stone_126453 (last visited Aug. 12, 2024).

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*  This Memorandum Opinion frequently references the Internal Revenue Code, Title 26, United States Code. References to the Internal Revenue Code sections shall be noted as "I.R.C. § __".

28 U.S.C. § 157(a).  The determination of the extent and nature of the estate's interest in property and the allowance or disallowance of exemptions from property of the estate are core proceedings as defined in 28 U.S.C. § 157(b)(2)(A, B).

**Background**

Before we go any further, a review of the landscape and major characters is in order.  On June 8, 2021 (the "Petition Date"), Daimon William Jacobs ("Debtor") filed a voluntary petition for relief under chapter 7 of the bankruptcy code (the "Petition").  Patrick J. Malloy III ("Trustee") was appointed to serve as the chapter 7 trustee in this case.  Prior to the Petition Date, Debtor's wholly-owned LLC, Breakthrough Management LLC ("Breakthrough"), created a trust as part of an employer sponsored one-participant 401(k) deferred compensation profit-sharing retirement plan (the "Solo 401k").[3]  Debtor ultimately placed the assets of the Solo 401k trust in a checking account at Solera Bank ending in #0319 (the "Disputed Account").[4]  In Schedule C filed with the Petition, Debtor claimed the entire Disputed Account, with a balance of $198,306.44 as of June 6, 2021, as exempt under Oklahoma law.[5]  Trustee filed an objection, alleging that all funds in the Disputed Account were non-exempt property of the estate, and sought summary judgment on that basis.

This Court granted partial summary judgment in favor of Trustee, finding certain funds in the Disputed Account, referred to as the 401k Loan Proceeds and the Roth IRA Rollover funds, were property of Debtor's bankruptcy estate and not protected by any claimed state law

---

[3] These facts were found by the Court in *In re Jacobs*, 648 B.R. 403, 408 (Bankr. N.D. Okla. 2023), ECF No. 61 (hereinafter "*Jacobs I*").  The facts found in *Jacobs I* are incorporated herein by this reference and will not be repeated except as necessary to set the stage for resolution of the remaining issues before the Court.

[4] *Id*. at 409.

[5] *Id*. at 407 n.12.

exemption.[6] On summary judgment, the Court was unable to resolve the issues of 1) whether the residue of funds in the Disputed Account (the "Remaining Funds")[7] were property of Debtor's estate; and 2) if so, whether they were exempt under Oklahoma law.

In *Jacobs I*, the Court first discussed whether the Solo 401k was excluded from property of the estate by operation of § 541(c)(2) and §§ 326-28 of title 60 of the Oklahoma Statutes. It next addressed whether the Solo 401k could be protected by an exemption under state law, § 1(A)(20) of title 31 of the Oklahoma Statutes. Applying the tests found in both *Greening Donald Co., Ltd. v. Oklahoma Wire Rope Products, Inc.*[8] and *In re Adams*,[9] the Court found the resolution of both issues hung on a single question: whether the Solo 401k is qualified for tax exemption under I.R.C. § 401(a).[10] Because the answer involves a review of bitterly disputed facts, including an evaluation of Debtor's intent regarding the creation and operation of the Solo 401k, the Court denied summary judgment and set the matter for a full evidentiary hearing.

The plot thickened when Debtor chose to amend his Schedule C to rely on federal, as opposed to state, law to exempt the Solo 401k from the estate, specifically § 522(b)(3)(C).[11] Although Trustee objected to this scene change, the Court found, in *Jacobs II*, that Debtor was

---

[6] *Id.* at 422-31.

[7] For clarity, the original balance of the Disputed Account on the Petition Date was $198,306.44, consisting of $42,033.93 in Roth IRA Rollover funds and $156,272.51 in Traditional IRA Rollover funds, as defined in *Jacobs I*, 648 B.R. at 410 n.27. After removal of the Roth IRA Rollover funds of $42,033.93 and the 401k Loan Proceeds of $48,500, both of which were found to be property of the estate, there "remained" approximately $107,772.51 in the Disputed Account on the Petition Date. These Remaining Funds are the focus of this contested matter.

[8] 1988 OK 125, 766 P.2d 970.

[9] 2020 OK 80, 474 P.3d 346.

[10] *Jacobs I*, 648 B.R. at 417, 421.

[11] *See* Schedule C (amended), ECF No. 77.

entitled to claim federal exemptions under § 522(b)(3) despite the fact that Oklahoma has opted-out of the federal exemption scheme provided in § 522(b)(2) and (d).[12]

Undeterred, Trustee filed a third motion for summary judgment, this time limiting the scope of his request to Debtor's claim of exemption for the 401k Loan Proceeds and the Roth IRA Rollover funds under § 522(b)(3)(C). The Court found that both were effectively distributed to Debtor before the Petition Date, were not exempt from taxation by I.R.C. § 401, and were thus not entitled to exemption under state or federal law.[13] After *Jacobs III*, the only issue before the Court is whether the Remaining Funds are property of Debtor's estate, and if so, whether they enjoy an exemption under any law.[14]

In anticipation of the final hearing in this matter, Debtor, apparently secure in the belief that a moving target is harder to hit, filed another round of amendments to his Schedule C.[15] It is unclear to the Court what Debtor seeks to accomplish with these amendments.[16] The amendments appear to break the Disputed Account into several smaller pieces, bouncing between state and federal exemptions for most of the funds, including reliance on § 522(d)(10)(E) for funds related to the 401k Loan Proceeds.[17] Trustee has reasserted his objection to exemption of all assets related

---

[12] *See* Order Denying Motion for Summary Judgment, ECF No. 97 (hereinafter "*Jacobs II*").

[13] *In re Jacobs*, 21-10658-M, 2023 WL 7381497 (Bankr. N.D. Okla. Nov. 7, 2023), ECF NO. 152 (hereinafter "*Jacobs III*").

[14] While the Court has made every effort to make its meaning clear, it may at times use the terms Solo 401k, Disputed Account, Traditional IRA Rollover funds, and Remaining Funds interchangeably. For the absence of doubt, the assets at issue in this opinion are the Remaining Funds as defined *supra* note 7, i.e., those funds remaining in the Disputed Account on the Petition Date that do not fall within the definition of Roth IRA Rollover funds or 401k Loan Proceeds.

[15] Schedules C, D, E (amended), ECF No. 158; "Motion to Approve Amendment No. 3 Listing Separately Each Retirement Fund Transaction" ECF No. 157; Letter, ECF No. 167-1, at 4.

[16] The Court can find no evidence that the amendments filed at ECF Nos. 157, 158, or 167 were served on any party beyond those receiving electronic notice through the CM/ECF system.

[17] ECF No. 158, at 5; ECF No. 167-1, at 8.

to the Solo 401k under any law, state or federal.[18] The crux of Trustee's Objection is that the Remaining Funds were not in an "account qualified for tax exemption under I.R.C. § 401(a)" on the Petition Date, which would render the funds property of the estate without the protection of any exemption under state or federal law. A hearing was held in this matter on June 6, 2024 (the "Hearing"), at which the parties presented evidence and argument. The Court afforded the parties the opportunity to supplement their closing argument with specific authority, such as to I.R.S. statutes and regulations, after which it took the matter under advisement.[19]

### Additional Findings of Fact

In addition to the findings of fact contained in *Jacobs I*, the following additional findings are made based on issues raised and evidence presented at the Hearing:

*1.  Breakthrough Management LLC*

Debtor testified Breakthrough was in good standing with the State of Oklahoma in January 2021, when the Solo 401k plan was adopted.[20]

*2.  Trustee's expert*

Trustee presented Steven Rutherford ("Rutherford") as an expert on the issue of whether Debtor was eligible to establish the Solo 401k.  Rutherford opined that he did not believe Debtor

---

[18] Trustee's Objection To Debtor's Last Amended Claim Of Exemption (Doc. No. 158) ("Trustee's Objection"), ECF No. 163.

[19] In response, Debtor filed a document titled "Post-Hearing Evidence Addressing the Use of 401K Loan Funds Post-Petition, Operational Compliance, and Clarification on Amendment Number Six." ECF No. 187. The document runs to 304 pages and contains many of the documents Debtor unsuccessfully offered as evidence at the Hearing. Because it appears Debtor misunderstood the scope of the expected argument, the Court struck the document from the record and instructed the parties to file no more pleadings in this case.  ECF No. 191. In a bit of pro se cat-and-mouse, Debtor saw the Court's order as a mere suggestion, and filed a "Reply to Doc. No. 191 Related to Statutory and Regulatory Brief." ECF No. 192. The Court again struck Debtor's pleading and renewed its order to cease filing in this case.  ECF No. 193.

[20] *See Jacobs I*, 648 B.R. at 408 (details regarding Breakthrough).

was eligible to form the Solo 401k because: 1) Debtor was not self-employed; 2) Debtor did not record typical business deductions for Breakthrough, resulting in the overpayment of tax during tax years 2020 and 2021; 3) Debtor's practice of operating on a cash basis, without the use of receipts, invoices, or an active business bank account, made it impossible to verify his business activity; and 4) Breakthrough appeared to operate without any license related to the practice of public accounting.

Rutherford was also asked to opine about Debtor's operation and use of the Solo 401k after its formation. In his opinion, 1) the same fiduciary responsibilities apply to all retirement plans under § 401(a), regardless of whether they are one- or multi-participant plans; the fiduciary duties in a one-participant plan are merely owed to oneself (making no apparent allowance for differences under the plan documents); 2) Debtor was "self-dealing" when he took withdrawals from the Disputed Account after the Petition Date; 3) Debtor did not operate the Solo 401k in substantial compliance with applicable I.R.S. rules and regulations; and 4) the Solo 401k was a "sham transaction," which he defined as a transaction that does not have economic substance or lacks business purpose.

Among the documents Rutherford reviewed in preparation for his testimony:  Debtor's 2020 I.R.S. Form 1040;[21] the Adoption Agreement for the Nabers Services, LLC Prototype Standardized Cash or Deferred Profit Sharing Plan 03-004 (the "Adoption Agreement");[22] and the Approval letter of Prototype Standardized Profit Sharing Plan with CODA addressed to Nabers

---

[21] 2020 I.R.S. Form 1040 of Daimon W. Jacobs, ECF No. 47-5.
[22] ECF No. 59-1, at 47.  *See also Jacobs I,* 648 B.R. at 408 n.15.

Services LLC from the Department of Treasury, dated March 31, 2014 ("Solo 401k Form Approval Letter").[23]

### 3. Leave of absence

Debtor provided evidence he submitted a request to "management" of Breakthrough on June 2, 2021, that he be allowed to take a one-year leave of absence from his employment (the "Leave Request").[24]   Additional evidence indicated that the Leave Request was granted on June 3, 2021, allowing Debtor to take a leave of absence from June 4, 2021, until June 3, 2022.[25] Trustee alleges the Leave Request was not executed or "papered up" until several months after the Petition Date. At the Hearing, Debtor insisted that the Leave Request was executed and granted just prior to the Petition Date. Trustee read Debtor's prior deposition testimony into the record, which made a vague inference that Debtor's Hearing testimony may lack veracity. As will be discussed below, the Court need not make a factual finding regarding the timing of the Leave Request due to its irrelevance to the issues at hand.

### 4. Loan repayment

Debtor made no effort to repay the 401k Loan when it became due.  He also acknowledged that the purpose of the Leave Request was to defer his repayment obligation on the 401k Loan, which first become due after the Petition Date, for a period of one year.

### 5. Debtor's control of investments under the Solo 401k

The Adoption Agreement for the Solo 401k includes a section regarding "Investment Control" that allows participants under the plan to control the investment of assets within their

---

[23] *See* Addenda Of Exhibits in Support of Motion For Summary Judgment, ECF No. 36, at 13.
[24] Debtor's Ex. 134-26.
[25] *Id*. 134-27.

accounts for all balances and future contributions.[26]

### 6.  *Debtor's post-petition treatment of Solo 401k trust account*

Debtor testified that he has not made any additional contributions to the Solo 401k, as either employer or employee, since the Petition Date. Nor has he taken any action to invest funds held in the Disputed Account in an interest-bearing or other risk-bearing account.

### 7.  *Debtor's work history*

Trustee introduced a spreadsheet generated by Debtor showing Debtor's client/contact list and business activity for the years 2020 and 2021.  Debtor testified that the financial services he performed in 2020 were completed through the Breakthrough business entity, generating $7,650 in revenue, all of which was declared as profit by Debtor on his 2020 I.R.S. Form 1040.[27] Breakthrough did not report any business deductions from revenue in 2020; nor did it report any wages paid to Debtor that year.[28]  Financial services performed in 2021, all of which occurred after the Petition Date, were conducted by Debtor as a sole proprietorship, i.e., not through the Breakthrough entity, generating $11,320 in revenue.[29] No evidence was presented regarding how or if that revenue was reported to the I.R.S. Although Debtor's contact list ran several pages, it shows he performed services for only 36 unique customers over the two-year period, with about half of those being repeat customers. In his bankruptcy schedules, Debtor reported receiving no income, either as wages or profit from a business, in the first six months of 2021.[30]  During both

---

[26] *See* Adoption Agreement, Docket 59-1, at 111-112; *Jacobs I*, 648 B.R. at 408 n.15.  *See also supra* note 22 and accompanying text.

[27] *See Jacobs I*, 648 B.R. at 408; ECF No. 47-5, at 5.  *See also supra* note 21 and accompanying text.

[28] ECF No. 47-5, at 5.

[29] Debtor's conduct no doubt casts a pall on the legitimacy of his claimed "leave of absence" from Breakthrough, which the Court would consider in greater detail if it were relevant to the issues before it.

[30] Trustee's Ex. 9-49 to -50.

2020 and 2021, it appears Debtor performed all compensable services between the months of September and December, suggesting a seasonal element to his work.  Whether as a sole-proprietor or working on behalf of Breakthrough, Debtor testified that he was only ever paid in cash, none of which was ever deposited into any bank account, and that no receipts or invoices were generated to document any of these services.

To the extent that the "Conclusions of Law" contain items that should more appropriately be considered "Findings of Fact," those findings are incorporated herein by this reference.

### Conclusions of Law

Commencement of a case under the Bankruptcy Code creates an estate comprised of, among other things, "all legal or equitable interests of the debtor in property *as of the commencement of the case*," "wherever located and by whomever held."[31] Debtor's interest in a profit-sharing retirement plan such as the Solo 401k certainly falls within this definition.  But what the Code giveth, the Code can also taketh away. Section 541(c)(2) excludes from property of the estate a beneficial interest of a debtor in a trust containing a "restriction on the transfer" of that interest "that is enforceable under applicable nonbankruptcy law."[32]  Oklahoma law provides the necessary restraint on alienation in sections 326-28 of title 60 of the Oklahoma Statutes. As discussed in *Jacobs I*, Oklahoma courts have applied those statutory provisions to require that a profit-sharing plan, as the relevant trust, in addition to containing the necessary restriction on transfer, must also qualify for tax exemption under federal law, in this case I.R.C. § 401(a).[33]  The Court was unable to resolve the issue of the Solo 401k's qualification for tax exemption on

---

[31] § 541(a)(1). *See also Jacobs I*, 648 B.R. at 411.
[32] § 541(c)(2). *See also Jacobs I*, 648 B.R. at 411-12.
[33] *See Jacobs I*, 648 B.R. at 417-18 (citing *Greening Donald Co., Ltd. v. Okla. Wire Rope Products, Inc.*, 766 P.2d 970 (Okla. 1988)).

summary judgment due to various genuine disputes of material fact.  Finally, with the evidentiary hearing complete, the issue is now ripe for decision.

Before we get to the main narrative, the Court feels it must emphasize an essential, but possibly overlooked, plot point in this matter: although the parties have presented extensive evidence of Debtor's behavior both before and after the Petition Date, *for purposes of this Opinion* the Court is generally only concerned with the former.  That is because "[w]hether an asset is estate property is determined by *examining the nature of the asset on the date the bankruptcy petition was filed*."[34] As discussed in *Jacobs I*, the Court's authority in this matter is constrained by the specific provisions of the Bankruptcy Code.[35] Section 541 exhaustively specifies the criteria that determines whether property of a debtor will become part of their bankruptcy estate on the date of filing the petition.[36] The statute does not give courts discretion to include or exclude property based on equitable considerations.[37] To the extent Trustee believes Debtor has engaged in fraudulent or other malevolent behavior with respect to this bankruptcy case, that behavior is not relevant to the

---

[34] *In re Roth*, 289 B.R. 161, 165 (Bankr. D. Kan. 2003) (citing § 541(a)(1)). *See also Cohen v. Chernushin (In re Chernushin)*, 911 F.3d 1265, 1269–70 (10th Cir. 2018) ("We have 'emphasize[d] § 541(a)(1) limits estate property to the debtor's interests as of the commencement of the case.'" (quoting *Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*, 84 F.3d 1281, 1285 (10th Cir.1996))); *Jacobs I*, 648 B.R. at 411 n.34 (citing *Case v. Hilgers (In re Hilgers)*, 371 B.R. 465, 468 (10th Cir. BAP 2007), *aff'd*, 279 Fed. App'x 662 (10th Cir. 2008)).

[35] *Jacobs I*, 648 B.R. at 431-33.

[36] § 541.  *See also Seafort v. Burden (In re Seafort)*, 669 F.3d 662, 672 (6th Cir. 2012) ("[W]e think the BAP majority properly read §§ 541(a)(1) and (b) together, as defining 'property of the estate' by what is included and excluded at a fixed point in time—as of commencement of the bankruptcy case.").

[37] *Law v. Siegel*, 571 U.S. 415, 423-24 (2014); *Clabaugh v. Grant (In re Grant)*, 658 Fed. App'x 411, 414 (10th Cir. 2016) ("*Siegel* held the Bankruptcy Code does not confer 'a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct.'" (quoting *Siegel*, 134 S. Ct. at 1196)).

Court's determination today unless it somehow implicates the status of the Solo 401k *as it existed on the Petition Date*. Trustee will have to look elsewhere for resolution of those grievances.[38]

## I.  The Solo 401k was qualified for tax exemption under I.R.C. § 401(a) on the Petition Date.

"In the context of employer retirement plans and arrangements, 'qualified' has a specific meaning. For a plan to 'qualify' under the provisions of the I.R.C., it must comply with the provisions of I.R.C. Section 401."[39] It is Debtor's burden to show the Solo 401k was qualified, as "[f]ailure to meet one of the section 401(a) requirements disqualifies the plan."[40] In general, to qualify for tax exemption under I.R.C. § 401(a) a retirement plan must satisfy its requirements in both *form* and *operation*.[41] The Court will limit its analysis to Trustee's specific objections raised in his briefs or at the Hearing.[42]

### A.  The Solo 401k met the requirements under I.R.C. § 401(a) as to form on the Petition Date.

According to the I.R.S., "[t]here are two basic steps in setting up a qualified plan."[43] "First, you adopt a written plan. Then, you invest the plan assets."[44] "A form failure occurs when a plan

---

[38] *Siegel*, 571 U.S. at 427.

[39] *In re Adams*, 2020 OK 80, ¶ 22, 474 P.3d 346, 352 (first citing I.R.C. § 401(a) (2020) ("Requirements for qualification"); and then citing I.R.C. § 401(k)(2) (2020) ("Qualified cash or deferred arrangement")).  *See also Hollen v. C.I.R.*, 101 T.C.M. (CCH) 1004 (2011), *aff'd sub nom. Michael C. Hollen, D.D.S., P.C. v. C.I.R.*, 437 Fed. App'x 525 (8th Cir. 2011).

[40] *Fam. Chiropractic Sports Injury & Rehab Clinic, Inc. v. C.I.R.*, 111 T.C.M. (CCH) 1046 (2016); *Jacobs I*, 648 B.R. at 412 n.39 and accompanying text.

[41] *See* Treas. Reg. § 1.401-1(a)(3) (setting out series of tests that must be met by a profit-sharing plan to constitute a qualified trust under I.R.C. § 401(a)); *Jacobs I*, 648 B.R. at 418 n.79; Treas. Reg. § 1.401-1(b)(3) ("The law is concerned not only with the form of a plan but also with its effects in operation."); *DNA Pro Ventures, Inc. Emp. Stock Ownership Plan v. C.I.R.*, 110 T.C.M. (CCH) 346, at *4 (2015) (same), *aff'd*, 856 F.3d 557 (8th Cir. 2017).

[42] Curiously, after spending close to three years litigating this matter, Trustee choose to waive oral argument after his presentation of evidence at the Hearing. The Court relies on Trustee's Objection and other prior briefing, his opening statement at the Hearing, and issues raised by Rutherford for its understanding of Trustee's specific objections.

[43] I.R.S., Retirement Plans for Small Business, Pub. 560 (2021), at 14.

[44] *Id*.

document does not contain required language or terms."[45] Trustee does not dispute the written plan

document adopted by Breakthrough satisfies the requirements of I.R.C. § 401(a) as to form.[46] The

Court previously found that the Disputed Account is a valid trust account under Oklahoma law.[47]

The Solo 401k is a type of one-participant retirement plan allowed by the I.R.S. to take advantage

of various tax exemptions.[48]   Section 401 of the Internal Revenue Code defines a one-participant

retirement plan as:

> a retirement plan that on the first day of the plan year—
>
>> covered only one individual (or the individual and the individual's spouse)
>> and the individual (or the individual and the individual's spouse) owned 100
>> percent of the plan sponsor (whether or not incorporated)[.][49]

The I.R.S. notes that "[t]he one-participant 401(k) plan isn't a new type of 401(k) plan. It's a

traditional 401(k) plan covering a business owner with no employees . . . . These plans have the

same rules and requirements as any other 401(k) plan."[50]

A retirement plan qualified for tax benefits, i.e., a qualified plan, must be "established by

an employer for the exclusive benefit of employees or their beneficiaries[.]"[51] Such a plan "can

---

[45] *DNA Pro Ventures, Inc.*, 110 T.C.M. (CCH) 346, at *4.

[46] *See e.g., Jacobs I*, 648 B.R. at 408 (plan form adopted by Breakthrough); *id.* at 417 (finding the Solo 401k plan contains sufficient restrictions on alienability to satisfy § 541(c)(2)); Treas. Reg. § 1.401–1 § (2)(ii) ("A qualified . . . profit-sharing . . . plan is a definite written program and arrangement which is communicated to the employees and which is established and maintained by an employer—. . . to enable employees or their beneficiaries to participate in the profits of the employer's trade or business[.]"). Trustee stated at the Hearing that he does not have any complaints about the written documentary form of the Solo 401k.  His objections are limited to Debtor's and Breakthrough's qualification for creating the Solo 401k and its operation after creation.

[47] *Jacobs I,* 648 B.R. at 412-23.

[48]   I.R.S., One-Participant 401(k) Plans, https://www.irs.gov/retirement-plans/one-participant-401k-plans (last updated Feb. 29, 2024) ("A one-participant 401(k) plan is sometimes called a:  Solo 401(k)[.]").

[49] I.R.C. § 401(a)(35)(E)(iv)(I).

[50] I.R.S., One-Participant 401(k) Plans, *supra* note 48.

[51] Treas. Reg. 1.401-1(a)(3)(ii). *See also* I.R.S., Pub. 560, at 12, *supra* note 43.

include coverage for a self-employed individual."[52] Section 401 of the I.R.C. defines a "self-employed individual" to mean, with respect to any taxable year, an individual who has net earnings from self-employment, which includes gross income earned as professional fees and other amounts received as compensation for personal services actually rendered by the individual, less allowed deductions which are attributable to such trade or business.[53] The definition includes an individual who was considered a self-employed individual for any prior taxable year.[54] "Sole proprietors and partners are self-employed."[55] "A sole proprietor is an individual who owns an unincorporated business by himself or herself, including a single-member limited liability company that is treated as a disregarded entity for tax purposes."[56]

Trustee argues that Debtor's entire Solo 401k retirement plan should be "disregarded as a sham transaction."[57]  Trustee asserts Debtor was not "self-employed" based on:

a. A lack of records or other documentary evidence indicating Debtor's self-employment prior to January 2021;

b. Breakthrough and Debtor's lack of revenue or income between January 2021 and the Petition Date;

c. Debtor's statements in Schedule I of the Petition, indicating:
    i.  he earned no income from self-employment in the 6 months prior to the Petition Date;
    ii.  he expected no such earnings in the future;
    iii.  he was unemployed on the Petition Date;
    iv.  he was not employed by Breakthrough on the Petition Date; and

---

[52] I.R.S., Pub. 560, at 12, *supra* note 45. *See also* I.R.C. § 401(c)(1)(A) ("The term 'employee' includes, for any taxable year, an individual who is a self-employed individual for such taxable year.").

[53] I.R.C. § 401(c); Treas. Reg. § 1.401–10 (Definitions relating to plans covering self-employed individuals).

[54] I.R.C. § 401(c)(1)(B)(ii).

[55] I.R.S., Pub. 560, at 5, *supra* note 45. *See also* I.R.C. § 401(c).

[56] I.R.S., Pub. 560, at 5, *supra* note 45. *See also* I.R.C. § 401(c).

[57] Trustee's Motion for Summary Judgment on Trustee's Objection to Debtor's Claim of Exemption Relative to a "401(k): Solera Bank Account ending in 0319 Balance as of 06/06/2021 $198,306.44" (the "Trustee's First Motion"), ECF No. 31, at 16.

      d.   Evidence that Breakthrough approved the Leave Request dated just prior to the Petition Date.

The Court finds Trustee's concern regarding Debtor's self-employment status a tempest in a teapot. Looking to the statute, the Court finds the term "self-employed individual" applied squarely to Debtor when Breakthrough adopted the Solo 401k. Breakthrough is a single-member limited liability corporation organized under the laws of the state of Oklahoma in existence in January 2021 when the Solo 401k was adopted.[58] Debtor was the sole owner of Breakthrough and treated it as a disregarded entity for tax purposes.[59] Debtor is the only participant covered by the Solo 401k, and he performed all professional services for Breakthrough.  Those services were its only material income-producing factor. Trustee agrees that all plan documentation supporting the Solo 401k was in order on the Petition Date, including the Solo 401k Form Approval Letter.[60]  In 2020, Debtor reported $7,650 in gross income flowing to him through Breakthrough and payment of $1,081 in self-employment tax.[61] Even though Breakthrough generated no revenue in 2021 prior to the Petition Date, the Court finds Debtor easily fell within the definition of self-employed individual when the Solo 401k was adopted.

Debtor testified that he was paid entirely in cash when he performed financial services on behalf of Breakthrough. He reported keeping a record of client payments on a spreadsheet, but not a single penny of Breakthrough revenue was deposited into any bank account. As a result, there

---

[58] Response of Debtor to Trustee's Motion for Summary Judgment (the "Debtor's Response"), Ex. 3, ECF No. 47-4.

[59] *See* 2020 I.R.S. Form 1040 of Daimon W. Jacobs, ECF No. 47-5; *supra* note 21 and accompanying text.

[60] *See* Solo 401k Form Approval Letter, ECF No. 36, at 13; *supra* note 23 and accompanying text.

[61] 2020 I.R.S. Form 1040 of Daimon W. Jacobs, Schedule C (Profit or Loss from Business (Sole Proprietorship)), ECF No. 47-5, at 5, line 7; Schedule 2, ECF No. 47-5, at 4, line 4; Schedule SE, ECF No. 47-5, at 8, line 12. *See also supra* note 21 and accompanying text.

are no independent bank or business records available to verify Debtor's self-reporting of Breakthrough's operational revenue. Debtor's records show all revenue generated in 2020 by Breakthrough occurred between September and December. Breakthrough likewise generated no revenue during the first 8 months of 2021. This is consistent with Debtor's statements on Schedule I to the Petition that he earned no income during the 6 months prior to the Petition Date. On Schedule I, Debtor indicated that he did not "expect an increase or decrease [of income] within the year after" the Petition Date, yet later reported earning $11,320 between September and December of 2021.[62]

Trustee has not articulated any cogent argument in support of his position that Debtor does not qualify as self-employed. Trustee's expert offered several objections to the way Debtor disclosed his income and employment status in his bankruptcy schedules and the way Debtor failed to deduct any expenses for Breakthrough in calculating his net earnings on his 2020 tax return. But none of these objections change the facts on the ground. In January 2021, Debtor fell within the definition of self-employment found in I.R.C. § 401, to wit: he earned income from a trade or business of which he was the sole owner and his personal services were a material income-producing factor in the business.

Trustee alleges the Leave Request was fraudulently backdated, i.e., was not executed until a later date after payments on the 401k Loan were already due and owing. Trustee may be correct.

---

[62] To the extent Trustee believes Debtor misrepresented his future earning potential in his bankruptcy schedules, that is a matter for another day. Alleged misconduct unrelated to a claim of exemption has no bearing on the issue of the validity of the exemption. *Law v. Siegel*, 571 U.S. 415, 421 (2014) ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988))); *Id*. at 424 ("A debtor need not invoke an exemption to which the statute entitles him; but if he does, the court may not refuse to honor the exemption absent a valid statutory basis for doing so.").

Debtor testified that the Leave Request was executed and approved in early June 2021, immediately prior to the Petition Date, and was executed with the specific intention of deferring Debtor's repayment obligation on the 401k Loan. While the Court found Debtor's testimony regarding the Leave Request to be unconvincing and evasive, any issues related thereto are irrelevant to the issue presently before the Court, which is the status of the Remaining Funds as property of the bankruptcy estate on the Petition Date. Despite Trustee's protestations to the contrary, the Court finds Debtor and Breakthrough were qualified to create and sponsor the Solo 401k at the time it was adopted in January 2021, and that it met the requirements under I.R.C. § 401(a) as to form on the Petition Date.[63] How, when, and whether Debtor arranged to repay the 401k Loan after the Petition Date falls outside the Court's domain.

### B. The Solo 401k met the operating requirements under I.R.C. § 401(a) on the Petition Date.

Generally, "[a]n operational failure occurs when: (1) a plan, in operation, does not meet the section 401(a) requirements, . . . , and (2) a plan fails to follow the terms of the plan document[.]"[64]  According to the I.R.S., a "qualification failure means any failure that adversely affects the qualification of a plan."[65]  Among the things that will cause a plan disqualification are:

> i.   the employer failed to timely amend the plan for a law change;
> ii.  the plan fails to satisfy the minimum coverage requirements;
> iii. the contributions or benefits are determined to be discriminatory in favor of highly compensated employees or owners;
> iv.  the plan fails to satisfy the minimum vesting standards;

---

[63] *See Clark v. Rameker*, 573 U.S. 122, 127 (2014) ("[T]o determine whether funds in an account qualify as 'retirement funds,' courts should not engage in a case-by-case, fact-intensive examination into whether the debtor actually planned to use the funds for retirement purposes as opposed to current consumption. Instead, we look to the legal characteristics of the account in which the funds are held, asking whether, as an objective matter, the account is one set aside for the day when an individual stops working.").

[64] *DNA Pro Ventures, Inc.*, 110 T.C.M. (CCH) 346, at *4 (internal citations omitted).

[65]  I.R.S., EP Examination Process Guide, https://www.irs.gov/retirement-plans/ep-examination-process-guide (last updated March 13, 2024).

    v.  the contribution or benefits for the benefit of one or more participants exceed the maximum permitted levels.[66]

Other violations can occur that, while requiring correction through excise taxes or income taxes, do not affect the qualification of the plan.  These include:

    i.  the employer failing to make the necessary contribution;
    ii.  the employer making contributions greater than the maximum allowed/ deductible amount;
    iii.  the trust participating in a prohibited transaction;
    iv.  failure to report a taxable distribution from the plan on participant's Form 1040; and
    v.  failure to report a loan that violated I.R.C. § 72(p).[67]

"Under [I.R.C.] section 401(a)(2) a trust is not qualified unless under the trust instrument it is impossible . . . for any part of the trust corpus or income to be used for, or diverted to, purposes other than for the exclusive benefit of such employees or their beneficiaries."[68]  This is commonly referred to as the "exclusive benefit rule."[69]  In short, that rule requires a fiduciary of a profit-sharing plan to act solely in the interest of the participants and beneficiaries, including taking action with the "care, skill, prudence, and diligence . . . that a prudent man" would take.[70]  This standard has been applied when a fiduciary exercises investment control over the assets of a retirement plan under I.R.C. § 401.[71]  Under ERISA, where a retirement plan "provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, *if a participant or beneficiary exercises control over the assets* in his account . . . *such participant or*

---

[66]  *Id*.
[67]  *Id.*;  I.R.S., EP Examination Process Guide - Discrepancy Adjustments, https://www.irs.gov/retirement-plans/ep-examination-process-guide-discrepancy-adjustments (last updated Jan. 29, 2024).
[68]  Tres. Reg. § 1.401-2(a)(1).
[69]  *In re Rogers*, 538 B.R. 158, 165 (Bankr. N.D. Ga. 2015).
[70]  *Id*. at 166 (internal citation omitted).
[71]  *Id*; *Westchester Plastic Surgical Assocs., P.C. v. C.I.R.*, 78 T.C.M. (CCH) 756 (T.C. 1999), at *7-8.

beneficiary shall **not** be deemed to be a fiduciary by reason of such exercise[.]"[72] The Solo 401k Adoption Agreement specifically allows control of investments by participants.[73] Trustee alleges that Debtor had a fiduciary obligation acting as trustee of the Solo 401k to invest its assets in some form of interest- or other risk-bearing investment, beginning at the time the plan was first adopted. He insists that Debtor's failure to do so was a violation of fiduciary duties owed by Debtor (to whom is unclear) and evidence that the entire Solo 401k account was a sham transaction from the beginning.[74] The Adoption Agreement of the Solo 401k allows Debtor, *as a participant*, to make any investment decisions he wishes, *no matter how foolish*. Trustee has provided no authority to the contrary. The Court cannot find that Debtor, acting as a participant of the Solo 401k, owed any duties to himself, Trustee, creditors, or anyone else regarding his choice of investment vehicles for the trust assets in the Solo 401k, either before or after the Petition Date.

Debtor acknowledged that neither he nor Breakthrough performed services or generated revenue between January 2021 and the Petition Date; nor did Breakthrough make any contributions on Debtor's behalf to the Solo 401k during that time. Debtor's history of operating Breakthrough only between the months of September and December puts both facts in context. Trustee has cited no authority that a seasonal business is unable to support a qualified retirement plan under I.R.C. § 401(a). Likewise, given that a sponsoring employer is under no obligation to make contributions

---

[72] 29 U.S.C. § 1104(c)(1)(A)(i) (emphasis added). *See also Kokoshka v. Inv. Advisory Comm. of Colum. Univ.*, No. 19 CIV. 10670, 2021 WL 3683508, at *6 (S.D.N.Y. Aug. 19, 2021) ("In other words, if a plan allows a participant to control where his or her contributions go and offers sufficient investment options, the fiduciary may not be held liable for the participant's own investment decisions."); *In re Rogers*, 538 B.R. at 165–66 ("When considering whether a plan is being operated for the exclusive benefit of employees in accordance with § 401(a)(2), courts may look to the ERISA prudent investor standard for fiduciary behavior even if a plan is not an ERISA governed plan." (first citing *Shedco, Inc. v. C.I.R.*, [76 T.C.M. (CCH) 267 (T.C. 1998)] at 12; and then citing *Westchester Plastic Surgical Assocs.*, [78 T.C.M. (CCH) 756 (T.C. 1999)], at *6)).

[73] *See supra* text accompanying note 26.

[74] *See, e.g.*, Trustee's First Motion, ECF No. 31, at 17.

in any given year, the Court cannot find that Breakthrough's failure to make contributions in early 2021was a disqualifying operational gaffe.[75]

Trustee originally claimed the 401k Loan received by Debtor as a participant of the Solo 401k in the days before the Petition Date was a sham and prohibited transaction that would cause the entire account to lose its qualification under I.R.C. § 401. The Court found the 401K Loan fell within an exception to rules against prohibited transactions, and that the 401k Loan Proceeds remaining in the Disputed Account on the Petition Date became property of the estate under § 541.[76] The Court cannot find Debtor's receipt of the 401k Loan in the days prior to the Petition Date, without more, was a violation of any requirement of I.R.C. § 401(a).[77]

Trustee has presented no authority that a business sponsoring a profit-sharing retirement plan under I.R.C. § 401 is required to generate a minimum threshold of revenue. Nor has Trustee cited any authority that a plan proponent has an obligation to keep particular books or records to satisfy the requirements of I.R.C. § 401(a). Trustee suggests that Debtor's Leave Request and subsequent (post-petition) leave of absence from Breakthrough, whether properly documented or not, was offensive to the operation of the Solo 401k trust account, but does not articulate the nature of that offense. To the extent Trustee suggests some kind of wrongdoing on behalf of Debtor, he is free to raise those issues in the appropriate forum. But generalized bad-faith conduct cannot be the basis to determine whether specific property belongs to a debtor's estate.[78] The Court finds Debtor has met his burden to show the Solo 401k, adopted by Breakthrough and covering Debtor

---

[75] *See e.g.*, I.R.S., Pub. 560, at 12, *supra* note 43 ("An employer may even make no contribution to the [profit-sharing] plan for a given year.").

[76] *See Jacobs I*, 648 B.R. at 428.

[77] *See infra* note 114 and accompanying text regarding Debtor's failure to repay the 401k Loan according to its terms.

[78] *See supra* note 37 and accompanying text.

as its sole owner and participant, complied with the requirements as to both form and operation of I.R.C. § 401(a) on the Petition Date, and as such it was a qualified plan that was exempt from taxation under I.R.C. 501(a).

## II. Debtor's post-petition operation of the Solo 401k did not disqualify the account under I.R.C. § 401(a).

Trustee takes the position that after the Petition Date, Debtor engaged in a series of prohibited transactions that caused the Solo 401k to be disqualified from coverage under I.R.C. § 401(a).[79] Trustee points to several actions by Debtor he believes prove the entire Solo 401k was sham, including early distributions taken from the Disputed Account, failure to repay the 401k Loan under its terms, the Leave Request from Debtor's employment at Breakthrough, failure to make additional contributions to the plan, and failure to invest the assets in the Disputed Account in a risk-bearing vehicle.

### i. Early distributions from Disputed Account

"Amounts paid to plan participants from a qualified plan are called distributions."[80] Distributions are a benefit available to any plan participant under I.R.C. § 401, as long as their ownership in the assets has vested and the distribution is consistent with the actual plan documents adopted by the plan sponsor.[81] Under a qualified cash or deferred arrangement that is part of a profit-sharing plan, such as the Solo 401k, distributions generally cannot be made until an employee reaches the age of 59½ or qualifies for a hardship distribution.[82] If an employee receives a distribution under the plan before they reach age 59½, i.e., an "early distribution," they may have

---

[79] As noted, the operation of the Solo 401k after the Petition Date is only relevant to the extent it would affect whether the Remaining Funds held in the Disputed Account were property of the estate on the Petition Date. *See supra* text accompanying note 38.

[80] I.R.S., Pub. 560, at 18, *supra* note 43.

[81] *In re Moore*, 640 B.R. 397, 405–06 (Bankr. S.D. Ohio 2022).

[82] *Id*. at 19.

to pay a 10% additional tax on the distribution in addition to the usual income tax due.[83]  As one court has noted:

> The IRS rules permit (and at times require) owners to take allowed distributions from an IRA, regardless of whether the funds will be used for a wise or ill-advised purpose. Whether used for a grocery bill or gambling spree, the IRS makes no inquiry as to the use of the funds and demands only that the owner remit any owed taxes on the distribution, now regarded as taxable income, to the IRS. The IRS rules limit how plan assets can be used and when they can be withdrawn but ***do not regulate the purpose for which the funds are used after they are withdrawn by the beneficiary and cease to be plan assets***.[84]

Although the court in *In re Moore* was referring to distributions from an IRA account, the principle espoused there applies equally to distributions from a qualified employer-sponsored retirement plan under I.R.C. § 401.[85] "Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."[86]

---

[83] *Id*. at 20; I.R.C. § 72(t)(1) and (2)(A)(i).

[84] *In re Moore*, 640 B.R. at 405-06 (emphasis added).

[85] I.R.C. § 402(a) reads:
Taxability of beneficiary of exempt trust.--Except as otherwise provided in this section, any amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under section 72 (relating to annuities).
*See also* I.R.C. § 72.

[86] *Cohen v. Chernushin (In re Chernushin)*, 911 F.3d 1265, 1269 (10th Cir. 2018) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)).

Not every withdrawal of assets from a retirement plan is treated as a distribution. Certain transactions between a qualified retirement plan and a "disqualified person"[87] are prohibited by law.[88] A "prohibited transaction" includes any direct or indirect

> (D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan; or
> (E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account[.][89]

These types of prohibited transactions are often referred to as "self-dealing."[90] An exception applies, however, when a taxpayer receives benefits to which they are entitled *as a participant* of

---

[87] I.R.C. § 4975(e)(2):

For purposes of [I.R.C. § 4975], the term "disqualified person" means a person who is-

(A) a fiduciary;

. . .

(C) an employer any of whose employees are covered by the plan; [or]

. . .

(E) an owner, direct or indirect, of 50 percent or more of--(i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation, . . .which is an employer or an employee organization described in subparagraph (C)[.]

*Id.* § 4975(e)(3):

Fiduciary.--For purposes of this section, the term "fiduciary" means any person who--

(A) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, [or]

. . .

(C) has any discretionary authority or discretionary responsibility in the administration of such plan.

[88] *In re Moore*, 640 B.R. at 405-06; I.R.C. § 4975.

[89] I.R.C. § 4975(c)(1)(D), (E). *See also* Advisory Opinion, Seymour Goldberg, Esq., Op. No. 2009-02A, at *2 (Dep't of Labor Sept. 28, 2009) ("Code section 4975(c)(1)(D) prohibits any direct or indirect transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan. Code section 4975(c)(1)(E) prohibits a fiduciary from dealing with the income or assets of a plan in his or her own interest or for his or her own account. Treasury Regulation section 54.4975-6(a)(5) characterizes transactions described in Code section 4975(c)(1)(E) as involving the use of authority by fiduciaries to cause plans to enter into transactions when those fiduciaries have interests which may affect the exercise of their best judgment as fiduciaries.").

[90] *See, e.g., In re Cherwenka*, 508 B.R. 228, 237-38 (Bankr. N.D. Ga. 2014).

the retirement plan, including the ability to withdraw funds from their own account, subject to the terms that would apply to any other participant of a qualified plan, such as payment of taxes or penalties.[91] This includes the ability of any participant to withdraw assets from a qualified retirement plan as an early distribution, subject to payment of the corresponding income and excise taxes that such an early distribution would incur.[92] Once plan assets are distributed from the

---

[91] I.R.C. § 4975(d)(9):

Exemptions.--Except as provided in subsection (f)(6), the prohibitions provided in subsection (c) shall not apply to--(9) receipt by a disqualified person of any benefit to which he may be entitled as a participant or beneficiary in the plan, so long as the benefit is computed and paid on a basis which is consistent with the terms of the plan as applied to all other participants and beneficiaries[.]

*See also* Advisory Opinion, *supra* note 89, at *3 n.2 ("Disqualified persons under the Code most likely to receive benefit distributions as participants, and thus be affected by Code section 4975(d)(9), would be *participants or beneficiaries who are also plan fiduciaries*, officers, directors or 10 percent or more shareholders of the employer who are employees covered by the plan; or owner-employees who own 50 percent or more of the employer." (emphasis added)); I.R.S., Retirement Plan Investments FAQs, https://www.irs.gov/retirement-plans/retirement-plan-investments-faqs (last updated Apr. 25, 2024) ("Certain transactions are exempt from being treated as prohibited transactions. For example, *a prohibited transaction does not take place if a disqualified person receives a benefit to which he or she is entitled as a plan participant or beneficiary*. However, the benefit must be figured and paid under the same terms as for all other participants and beneficiaries." (emphasis added)); *Indep. Bank v. Baarstad*, 2018 Ill. App. 2d 170496, at *6.

[92] *In re Cherwenka*, 508 B.R. at 237 ("[T]he Court does not accept that [I.R.C. § 4975(c)(1)(D)] concludes that early withdrawals amount to a disqualifying prohibited transaction. *The plain reading seems to suggest that once an early withdrawal is effectuated, this section is no longer applicable.* Funds withdrawn from the plan no longer constitute 'income or assets of a plan.' . . . Additionally, it seems that the tax penalties associated with early withdrawals would be redundant if the entire IRA was deemed disqualified with any early withdrawal. The Court cannot make the leap that early withdrawals are akin to transactions where the interested party sits on both sides of a deal." (emphasis added) (citation omitted)); *In re Rogers*, 538 B.R. at 166–67 ("If the funds were proper distributions under the Plan and treated accordingly for tax purposes, then they were being used to fund the liabilities to the sole participant in accordance with the Plan, which is precisely what the exclusive benefit rule is intended to protect.").

underlying trust account, they are no longer considered trust assets, and are no longer subject to I.R.C. § 4975.[93]

In 2009, The Department of Labor addressed the issue of whether a distribution from an IRA to a disqualified person would be considered a prohibited transaction under I.R.C. § 4975(c):

> With respect to your first question regarding whether the IRA distributions to the Trust constitute prohibited transactions, it is the opinion of the Department that, notwithstanding the Trust's status as a disqualified person under Code section 4975(e)(2), neither the trustee's decision to take a benefit distribution from the IRA in accordance with the terms of the IRA, nor the Trust's receipt of the benefit distribution as the IRA beneficiary, is a prohibited transaction under Code section 4975(c). Code section 4975(d)(9) provides that the prohibited transaction provisions in Code section 4975(c) shall not apply to the receipt by a disqualified person of any benefit to which he may be entitled as a participant or beneficiary in a plan provided that the benefit is computed and paid on a basis which is consistent with the terms of the plan as applied to all other participants and beneficiaries.
>
> . . .
>
> Thus, the Department believes these provisions should be read together as stating that ordinary benefit distributions are not prohibited transactions, to the extent that the benefit is computed and paid on a basis consistent with the terms of the plan, and applied to all other participants and beneficiaries. This position is consistent with the Supreme Court's decision in *Lockheed Corp. v. Spink*, 517 US 882 (1996), holding that although employees of the employer maintaining the plan are "parties in interest" under ERISA's prohibited transaction provisions, the payment of benefits due to plan participants pursuant to the terms of an otherwise lawful plan is not a "transaction" within the sense that Congress used that term in ERISA section 406 to define "prohibited transactions." Furthermore, although a plan participant or IRA owner also may be a fiduciary of the plan or IRA, it does not necessarily follow that all decisions made by a participant or IRA owner with respect to the plan or IRA are fiduciary decisions. Rather**,** *just as a plan participant's decision to elect to take a permissible benefit distribution from an employer-sponsored plan is not a fiduciary act by the participant,* an IRA owner's decision to make an otherwise permissible benefit distribution to himself or herself in accordance with the terms of the IRA is not an act by the IRA owner as a fiduciary within the meaning of the prohibitions in Code sections 4975(c)(1)(D) and (E).[94]

---

[93] *See In re Cherwenka,* 508 B.R. at 237; *In re Moore*, 640 B.R. at 405. *See also In re Ridgway*, 108 B.R. 294, 297–98 (Bankr. N.D. Okla. 1989) (finding pre-petition disbursement to debtor was not a prohibited transaction that would disqualify debtor's IRA).

[94] Advisory Opinion, *supra* note 89, at *3-4 & n.2 (emphasis added) ("Disqualified persons under the Code most likely to receive benefit distributions as participants, and thus be affected by Code section 4975(d)(9), would be participants or beneficiaries who are also plan fiduciaries,

Before discussing the particulars of Debtor's post-petition withdrawals from the Disputed Account, let us set the stage in which they took place. Debtor, as the 100% owner of Breakthrough and trustee of the Solo 401k, meets the definition of both a disqualified person and a fiduciary.[95] As the Court found in *Jacobs I*, Debtor completed the 401k Loan transaction in the days before the Petition Date, but did not remove the 401k Loan Proceeds from the Disputed Account. The moment Debtor filed this bankruptcy case, the 401k Loan Proceeds became property of his estate under § 541(a).[96] The Court has determined that no exemption exists to remove the 401k Loan Proceeds from the estate.[97] At the conclusion of this contested matter, the 401k Loan Proceeds will be removed from the Disputed Account and administered by Trustee.[98]

After the Petition Date, Debtor orchestrated numerous withdrawals from the Disputed Account, either as cash, transfers to his personal bank account, or direct transfers to creditors (the "Unauthorized Withdrawals").[99] Debtor testified that each Unauthorized Withdrawal was used for personal living expenses; i.e., none of the withdrawn funds were invested in other assets or used to pay expenses of Breakthrough. As soon as the Court became aware of the Unauthorized Withdrawals, it ordered Debtor to cease such activity, due to the pending issue of whether the

---

officers, directors or 10 percent or more shareholders of the employer who are employees covered by the plan; or owner-employees who own 50 percent or more of the employer.").

[95] *See supra* note 87.

[96] *Jacobs I*, 648 B.R. at 428-29.

[97] *Id*. at 431(no state law exemption under Okla. Stat. tit. 31, § 1(A)(20)); *Jacobs III*, 2023 WL 7381497, at * 5 (no federal exemption under § 522(b)(3)(C)).

[98] *See infra* note 114 and accompanying text regarding the tax consequence of the distribution of the 401k Loan Proceeds to Trustee and the failure of Debtor to repay the loan.

[99] *See* Trustee's Ex. 5 (Solera Bank account statements).  The Court refers to these withdrawals as "unauthorized" because they were made without Court permission at a time Debtor had claimed the Disputed Account as exempt, but the Court had not yet ruled on that exemption.

Disputed Account was property of the estate, or subject to various exemption claims.[100] In all, Debtor removed approximately $55,000 in Unauthorized Withdrawals from the Disputed Account.

At the Hearing, both Debtor and Trustee characterized the Unauthorized Withdrawals as if they were simply draws against the 401k Loan Proceeds. Debtor presented evidence that he kept a running tally of the Unauthorized Withdrawals, which he designated "Loan Receivable Balance."[101]   Despite this misconception, the Court finds no relationship between the Unauthorized Withdrawals and the 401k Loan Proceeds.

On the Petition Date, the 401k Loan Proceeds and the Roth IRA Rollover funds became non-exempt property of Debtor's estate.[102] The only funds in the Disputed Account that *arguably* remained property of the Debtor on the Petition Date were the Remaining Funds.[103] Each Unauthorized Withdrawal was merely an early distribution from the Remaining Funds, for which Debtor owes both income taxes and (early withdrawal) excise taxes as determined by I.R.S. regulations. Debtor's testimony that he attempted to limit the Unauthorized Withdrawals to keep them under $50,000, which was the original amount of the 401k Loan, does not alter this landscape.

Trustee declares each Unauthorized Withdrawal from the Disputed Account to be a prohibited transaction and evidence of self-dealing under I.R.C. § 4975(c)(1)(D) or (E) that would disqualify the Solo 401k from protection under I.R.C. § 401. Regardless of Debtor's

---

[100] *See* Preliminary Injunction, ECF No. 41; Supplemental Preliminary Injunction, ECF No. 93.

[101] Debtor's Ex. 134-37.

[102] *Jacobs I*, 648 B.R. at 425, 428-31; *Jacobs III*, 2023 WL 7381497, at *4-5.

[103] The Unauthorized Withdrawals likely ran afoul of § 362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," but it does not appear they ran afoul of any rule, regulation, or law promulgated by the I.R.S. *See Franco v. Franco (In re Franco)*, 574 B.R. 730, 736 (Bankr. D.N.M. 2017) ("[W]here the estate's ownership of property is in bona fide dispute, it is reasonable to hold that the stay applies, pending resolution of the dispute."); *In re Grooms*, 599 B.R. 155, 165-66 (Bankr. W.D. Okla. 2019) (same).

misunderstanding or intentions, I.R.S. regulations allow him to withdraw funds freely from the Solo 401k *as long as he pays the piper*.[104] Given that the Court has found the Remaining Funds are not property of the estate, Debtor's post-petition use of the Unauthorized Withdrawal funds is of no concern to the I.R.S. or this Court.[105]

### ii.    Failure to repay the 401k Loan and the effect of the Leave Request

As noted in *Jacobs I*, Debtor executed the 401k Loan in the days immediately preceding the Petition Date.[106] The 401k Loan complied with the relevant I.R.S. requirements and the Solo 401k plan documents, such that it was not deemed an immediate distribution to Debtor.[107] Upon failure to repay such a loan according to its terms, "a deemed distribution occurs as a result of the failure to make such payments."[108] I.R.S. regulations govern the timing and amount of such

---

[104] *See, e.g. Rupp v. Kunz (In re Kunz)*, 309 B.R. 795, 799 (10th Cir. BAP 2004) ("[T]he Court finds that because the ERISA-qualified Plan meets the requirements of 11 U.S.C. § 541(c)(2), it is not property of the estate and cannot be reached by the Trustee *despite Kunz's power to withdraw funds from the account at any time.*" (emphasis added)), *aff'd*, 124 Fed. App'x 597 (10th Cir. 2005).

[105] *See supra* text accompanying note 84. Even if the Unauthorized Withdrawals were characterized as prohibited transactions, Trustee exaggerates the significance of a prohibited transaction on the qualification of a retirement plan under I.R.C. § 401(a). *Unlike an individual retirement account under I.R.C. § 408*, a prohibited transaction by a disqualified person will generally elicit a tax consequence to the taxpayer, but will rarely prove fatal to a retirement plan under I.R.C. § 401(a). *See, e.g.,* I.R.C. § 4975(a) ("Initial taxes on disqualified person.--There is hereby imposed a tax on each prohibited transaction."); *In re Rogers*, 538 B.R. at 167 ("Under certain circumstances, an IRA may be disqualified upon the happening of one § 4975 prohibited transaction. *See* 26 U.S.C. § 408(e)(2). *However, the same rule does not apply to profit sharing plans;* instead, certain excise taxes are imposed on the disqualified person for each prohibited transaction with a profit sharing plan. 26 U.S.C. § 4975(a)-(b)" (emphasis added)).

[106] *Jacobs I*, 648 B.R. at 410 n.26.

[107] *See* Treas. Reg. § 1.72(p)-1, Q&A (3)(a) (2006) ("In general. A loan to a participant or beneficiary from a qualified employer *plan will not be a deemed distribution* to the participant or beneficiary if the loan satisfies the repayment term requirement of section 72(p)(2)(B), the level amortization requirement of section 72(p)(2)(C), and the enforceable agreement requirement of paragraph (b) of this Q&A–3, but only to the extent the loan satisfies the amount limitations of section 72(p)(2)(A)." (emphasis added)).

[108] *Id.* Q&A (4)(a).

deemed distribution.[109] If, as alleged by Debtor, a participant takes a "bona fide leave of absence" without pay, they may defer repayment of the level installment payments required under the terms of an otherwise valid loan for up to one year.[110] If, as alleged by Trustee, there was an "express or tacit understanding that the loan will not be repaid" at the time a loan is received by a beneficiary, "then the amount transferred is treated as an actual distribution from the plan for purposes of the Internal Revenue Code, and is not treated as a loan or as a deemed distribution under section 72(p)."[111]

Under its original terms, the first quarterly installment payment of the 401k Loan became due on September 1, 2021.[112] In documents dated June 2 & 3, 2021, Debtor purportedly requested

---

[109] *Id.* Q&A (10):

Q–10: If a participant fails to make the installment payments required under the terms of a loan that satisfied the requirements of Q&A–3 of this section when made, when does a deemed distribution occur and what is the amount of the deemed distribution?

A–10:  (a) Timing of deemed distribution. Failure to make any installment payment when due in accordance with the terms of the loan violates section 72(p)(2)(C) and, accordingly, results in a deemed distribution at the time of such failure. However, the plan administrator may allow a cure period and section 72(p)(2)(C) will not be considered to have been violated if the installment payment is made not later than the end of the cure period, which period cannot continue beyond the last day of the calendar quarter following the calendar quarter in which the required installment payment was due.

(b) Amount of deemed distribution. If a loan satisfies Q&A–3 of this section when made, but there is a failure to pay the installment payments required under the terms of the loan (taking into account any cure period allowed under paragraph (a) of this Q&A–10), then the amount of the deemed distribution equals the entire outstanding balance of the loan (including accrued interest) at the time of such failure.

[110] *Id.* Q&A (9).  Such leave will not defer the requirement that the full loan be repaid within 5 years.  *Id.* ("However, the loan (including interest that accrues during the leave of absence) must be repaid by the latest permissible term of the loan and the amount of the installments due after the leave ends must not be less than the amount required under the terms of the original loan.").

[111] *Id.* Q&A (17).

[112] Trustee's Ex. 7-4 (Approval of Plan Loan/Loan Terms), Ex. 7-9 (Amortization Schedule).

and approved the Leave Request, allowing for a leave of absence from his employment with Breakthrough from June 4, 2021 to June 3, 2022.[113] Trustee alleges the Leave Request was backdated in an improper effort to rehabilitate the 401k Loan after it had initially become due under its terms. Trustee also points out that Debtor engaged in the same type of work for Breakthrough customers when he was supposedly on leave from Breakthrough, casting additional doubt on the bona fides of the Leave Request. Fortunately, the Court need not sort out this factual rat's nest; when or whether Debtor took a "bona fide leave of absence" from his employment with Breakthrough has no bearing on the issues before this Court.

Debtor acknowledges he made no payments toward the 401k Loan prior to September 1, 2021, but testified that he has made some sporadic payments since that time. Whether and when repayments on the 401k Loan were required to begin will affect whether and when an actual distribution of those funds to Debtor has been deemed to occur. That will, in turn, affect whether and when Debtor will incur tax consequences related to the 401k Loan.[114] Issues of consequence to the Debtor, to be sure. But none of those things affect Debtor's bankruptcy estate or the Trustee's administration thereof. Whether there was an actual distribution of the 401k Loan Proceeds to Debtor before the Petition Date or a deemed distribution after the Petition date does not change the outcome here: the 401k Loan Proceeds are property of the estate, without exemption, and will be administered by Trustee. Trustee insists that Debtor's receipt of the 401k Loan, with no obvious intention to repay it, was a prohibited transaction that would cause the disqualification of the entire Solo 401k. Trustee throws around words like "self-dealing" and "sham transaction," but does not

---

[113] *See supra* notes 24 & 25 and accompanying text.

[114] Whether the 401k Loan is characterized as an actual distribution or a later deemed distribution is an issue that may affect Debtor's tax liability to the I.R.S., but it has no bearing on the issues before this Court.

provide a modicum of authority why an actual or deemed distribution, both taxable events to Debtor, should be characterized as the kind of disqualifying event under I.R.C. § 401 that would cause the Solo 401k to lose its qualification as a tax-exempt account.

### iii.    *Debtor's post-petition treatment of the Disputed Account*

In a belt-and-suspenders effort to protect the assets in the Solo 401k, despite taking the position that the Disputed Account never became property of his bankruptcy estate, Debtor claimed it as exempt under various state and federal statutes.[115] Such claims of exemption made the funds in the account at least *arguably* property of the estate, subject to the stay provisions of § 362(a), until such time as the Court made a determination of the estate's interest in it.[116]  As a result, since the Petition Date, the automatic stay has prevented Debtor from engaging in "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]"[117]  This Court entered a Preliminary Injunction on June 8, 2022, in order to clarify that Debtor was not allowed to take any further action with regard to the Disputed Account until the Court ordered otherwise.[118]

Debtor readily admits he has taken no action since the Petition Date to cause either himself, as participant, or Breakthrough, as employer, to make additional contributions to the Solo 401k or to invest the funds in the Disputed Account in a more lucrative investment vehicle. Trustee suggests Debtor's failure to make additional contributions to the Solo 401k is evidence that its

---

[115] Debtor originally declared funds in the Disputed Account exempt under Okla. Stat. tit. 31, § 1(A)(20), Petition, ECF No. 1, at 20, and later under § 522(b)(C)(3), ECF No. 77.

[116] *See* cases cited *supra* note 103; *Bucchino v. Wells Fargo Bank, N.A. (In re Bucchino)*, 439 B.R. 761, 770 (Bankr. D.N.M. 2010) ("Property of the estate is not exempt unless and until the time to object to the claim of exemption expires or a timely objection is overruled."), *aff'd*, CV 10-1177, 2011 WL 13284466 (D.N.M. Sept. 14, 2011).

[117] § 362(a)(3).

[118] ECF No. 41.

initial creation was a sham and that Debtor never intended to make regular contributions toward his retirement. Trustee also believes Debtor's failure to move the funds from the non-interest-bearing checking account at Solera Bank into a risk-bearing investment is further evidence of this conspiratorial sham. But if Debtor had taken either of those actions, Trustee would likely be here complaining that Debtor was trying to obtain possession of or exercise control over the Disputed Account in violation of § 362(a)(3). Because the specter of the automatic stay has hung over the Disputed Account since the Petition Date, the Court cannot find Debtor's failure to add to or alter the investment of the assets in the Disputed Account is evidence of malfeasance or malignant intent.

The Court acknowledges Debtor's treatment of the Solo 401k after the Petition Date raises red flags suggesting Debtor *may* not intend to treat the Solo 401k as a permanent retirement vehicle going forward.[119] But the Court cannot take that activity into consideration when making the

---

[119] *See* Tres. Reg. § 1.401-1(b)(2), which states:

> The term "plan" implies a permanent as distinguished from a temporary program. Thus, although the employer may reserve the right to change or terminate the plan, and to discontinue contributions thereunder, the abandonment of the plan for any reason other than business necessity within a few years after it has taken effect will be evidence that the plan from its inception was not a bona fide program for the exclusive benefit of employees in general. Especially will this be true if, for example, a pension plan is abandoned soon after pensions have been fully funded for persons in favor of whom discrimination is prohibited under section 401(a). The permanency of the plan will be indicated by all of the surrounding facts and circumstances, including the likelihood of the employer's ability to continue contributions as provided under the plan. In the case of a profit-sharing plan, other than a profit-sharing plan which covers employees and owner-employees (see section 401(d)(2)(B)), it is not necessary that the employer contribute every year or that he contribute the same amount or contribute in accordance with the same ratio every year. However, merely making a single or occasional contribution out of profits for employees does not establish a plan of profit-sharing. To be a profit-sharing plan, there must be recurring and substantial contributions out of profits for the employees. In the event a plan is abandoned, the employer should promptly notify the district director, stating the circumstances which led to the discontinuance of the plan.

present determination, which must be restricted to "the law and *facts* as they exist *on the date of filing the petition*."[120] As we saw in *Jacobs I*, a debtor cannot take action after the filing of a bankruptcy petition that will alter the exempt status of estate property.[121] The Court finds the corollary is also true: post-petition actions taken by a debtor will not permit a trustee to claw property into the estate that was solidly outside the bankruptcy estate on the petition date.  As the United States Supreme Court noted a century ago:

> [T]he point of time which is to separate the old situation from the new in the bankrupt's affairs is the date when the petition is filed. This has been recognized in our decisions. Thus we have said that *the law discloses a purpose 'to fix the line of cleavage' with special regard to the conditions existing when the petition is filed,* and that *'it is then* that the bankruptcy proceeding is initiated, *that the hands of the bankrupt and of his creditors are stayed and that his estate passes actually or potentially into the control of the bankruptcy court[.]'*[122]

Were the Court to review Debtor's operation of the Solo 401k as of the date of the Hearing, it may have come to a different conclusion. Despite raising a multitude of objections, Trustee has not offered any compelling reason why the Court should consider Debtor's post-petition actions in making its determination that the Solo 401k was a qualified retirement plan under I.R.C. § 401(a) on the Petition Date.

---

[120] *Pasquina v. Cunningham (In re Cunningham)*, 354 B.R. 547, 553 (D. Mass. 2006), *aff'd*, 513 F.3d 318 (1st Cir. 2008). *See also Armstrong v. Peterson (In re Peterson)*, 897 F.2d 935, 937 (8th Cir. 1990) ("[W]e hold today that *only the facts existing on the date of filing are relevant* to determining whether a debtor qualifies for a claimed exemption." (emphasis added)); *Xiao v. Chorches*, 610 B.R.183, 194 (D. Conn. 2019) (same).

[121] *Jacobs I*, 648 B.R. at 429 n.146-47; *White v. Stump*, 266 U.S. 310, 313 (1924) ("The exception, as its words and the context show, is not of property which would or might be exempt if some condition not performed were performed, but of property to which there is under the state law a present right of exemption-one which withdraws the property from levy and sale under judicial process.").

[122] *White v. Stump*, 266 U.S. at 313 (emphasis added) (internal citations omitted).

### III.      The Remaining Funds are not property of Debtor's estate.

On the Petition Date, all of Debtor's property became property of his bankruptcy estate, except those items specifically listed in § 541(b) and (c).[123] Despite *also* listing the Solo 401k trust account as exempt on Schedule C of the Petition and numerous amendments, Debtor has consistently maintained that the funds in the Disputed Account, including the Remaining Funds, fall within the exception of § 541(c).[124] Under § 541(c)(2), a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law" will be enforceable in a case under Title 11 to exclude that interest from the debtor's bankruptcy estate.[125]   In *Jacobs I*, the Court found that Debtor's interest in the Solo 401k was a beneficial interest in a valid trust that contained a restriction on its transfer.[126] The Court also found that Oklahoma law, specifically §§ 326-28 of title 60 of the Oklahoma Statutes, provides the applicable nonbankruptcy law for the enforcement of that restriction, so long as the underlying trust is "qualified for tax exemption purposes under present or future Acts of Congress[.]"[127]   The Oklahoma Supreme Court has interpreted the Oklahoma statutes as follows:

> There are two primary requirements contained in these statutes. First, that the [retirement plan] be tax exempt under the current Federal Tax Laws. 60 O.S.1981 § 326. Second, the [retirement plan] must contain provisions indicating the parties' intent that the [retirement plan] be inalienable and protected. 60 O.S.1981 § 328. Section 327 merely creates the option of declaring an [retirement plan] as exempt.[128]

---

[123] § 541(a).

[124] *See, e.g.*, Supplemental Brief of Debtor, ECF No. 59, at 2; *Jacobs I*, 648 B.R. at 411-19 (Court unable to determine whether Traditional IRA Rollover funds were property of Debtor's estate on summary judgment).

[125] § 541(c)(2); *Patterson v. Shumate*, 504 U.S. 753, 757-58 (1992) ("The natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law.").

[126] *Jacobs I*, 648 B.R. at 412-14.

[127] Okla. Stat. tit. 60, § 326.

[128] *Greening Donald Co., Ltd. v. Okla. Wire Rope Products, Inc.*, 1988 OK 125, ¶ 6, 766 P.2d 970, 972.

Section 401(a) of the Internal Revenue Code provides the requirements that a trust forming part of a retirement plan, such as profit-sharing plan, must meet for the trust to be a qualified trust entitled to preferential tax treatment under section I.R.C. § 501(a).[129]  Thus the Court's finding that the Solo 401k was a qualified plan under § 401(a) on the Petition Date is sufficient to conclude that it is exempt from taxation under I.R.C. § 501(a).[130]  This finding, combined with the previous finding that the Solo 401k contains the operative restrictions on alienation, is also sufficient support for the conclusion that the Remaining Funds in the Disputed Account on the Petition Date meet the requirements of § 541(c)(2) to be excluded from Debtor's bankruptcy estate. Having found the Remaining Funds in the Disputed Account never became part of his bankruptcy estate, we need not reach Debtor's alternative argument that his interest in those funds qualifies as exempt under either federal or state exemption law.[131]

**IV.    The Court finds no cause to change its prior ruling regarding the Roth IRA Rollover funds.**

In *Jacobs I*, the Court found the Roth IRA Rollover funds were not excluded by § 541(c)(2), and thus became property of Debtor's bankruptcy estate on the Petition Date.[132]  The

---

[129] I.R.C. § 501(a) ("Exemption from taxation.--An organization described in . . . section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.").

[130] *Hollen v. C.I.R.*, 101 T.C.M. (CCH) 1004, *2 (2011) ("We do not specifically discuss the qualification of the [plan] under section 501(a) because the exemption of the [plan] under section 501(a) follows from the qualification of the [plan] under section 401(a)."), *aff'd sub nom. Michael C. Hollen, D.D.S., P.C. v. C.I.R.*, 437 Fed. App'x 525 (8th Cir. 2011).

[131] *See Patterson*, 504 U.S. at 765–66; *Owen v. Owen*, 500 U.S. 305, 308 (1991) ("No property can be exempted (and thereby immunized), however, unless it first falls within the bankruptcy estate."). As discussed in *Jacobs I*, both state and federal exemption laws, Okla. Stat. tit. 31, § 1(A)(20) and § 522(b)(3)(C), incorporate the same requirement as Okla. Stat. tit. 60, § 326, that an interest in a retirement fund exempt from taxation under § 501(a) will qualify for a bankruptcy exemption.  *See Jacobs I*, 648 B.R. at 418 n.82 and 421 n.97-98. While this line of analysis may be unsatisfying to the parties, who fixated on the relative exemption statutes, it does not change the ultimate result in this case regarding what property will ultimately be administered by Trustee.

[132] *Jacobs I*, 648 B.R. at 424-25.

Court based this conclusion on facts as presented by the Trustee's First Motion[133] and the Debtor's Response filed with assistance of counsel.[134]  Specifically, Trustee made the following factual allegation:

> 7.  With respect to the transfer of $42,033.93 from the Roth IRA on January 21, 2021 to the subject 401k, the Debtor acknowledges that, pursuant to IRS regulations, the transfer was a "prohibited transaction" and that it was not "supposed to occur." He additionally stated that as of the date of his 2004 exam on 4/08/2022, he had not undone the transfer. As of the date of the commencement of these proceedings, the referenced Roth monies were on deposit in the subject 401k account.[135]

To which Debtor responded:

> [Debtor] admits numbered paragraph 7 of the Trustee's [First] Motion but *specifically asserts that the referenced "transfer" was not a prohibited transaction but rather an invalid rollover.* [Debtor] additionally stated that "he had not undone the transfer," and that he had not been allowed to correct the transfer and is seeking guidance though the Department of Labor. The Trustee used the term "prohibited transaction" in his questioning of [Debtor] and [Debtor] mistakenly responded affirmatively to the Trustee's question.[136]

Further, Debtor stated:

> Based on the expertise and advice of E-Trade, [Debtor] honestly and mistakenly believed that he had transferred the Disputed Funds into an eligible retirement plan. *It only upon the Trustee's action in the above-styled matter that [Debtor] learned of the invalid rollover.* Finally, *though [Debtor] has not rolled the Disputed Funds back into the E-Trade Roth IRA, [Debtor] intends to do so as soon as practically possible.* [Debtor] is currently enjoined from correcting the invalid rollover by the terms of 11 U.S.C. § 362(a). Upon the Court's permission or the expiration of the 11 U.S.C. § 362(a) in this case, [Debtor] will return the Disputed funds to the E-Trade Roth IRA and self-certify the rollover under Rev. Proc. 2016-47. [Debtor]'s return of the funds to the E-Trade Roth IRA and self-certification will permit [Debtor] to report the contribution as a valid rollover unless later informed otherwise by the IRS.[137]

---

[133] Trustee's First Motion, ECF No. 31.

[134] Debtor's Response, ECF No. 47.

[135] Trustee's First Motion, ECF No. 31, at 4 ¶7 (internal citations omitted).

[136] Debtor's Response, ECF No. 47-1, at 2 ¶7.

[137] *Id*. at 21-22.

Based on *Debtor's admission that the Roth IRA Rollover was an invalid rollover* that he had not taken steps to reverse it as of the Petition Date, the Court determined:

> Debtor acknowledges that the Roth IRA Rollover on January 19, 2021, of $42,033.93 from the E*Trade Roth IRA into the Disputed Account was considered an "invalid rollover" by the IRS. Because the Solo 401k was not eligible to receive the Roth IRA funds, the transfer was considered a taxable distribution to Debtor as of March 20, 2021, which was 60 days from the original transfer. As of the Petition Date, the Roth IRA Rollover funds had lost their protected status under I.R.C. § 408A; they were the equivalent of cash sitting in the Disputed Account, subject to the unfettered control and discretion of Debtor. Such funds come into the estate under § 541(a)(1).[138]

Since the entry of *Jacobs I*, Debtor has filed a series of amendments to his exemption claims on Schedule C.[139]  In his most recent volleys, Debtor renews his claims of exemption for the Roth IRA Rollover funds under state and federal law, both of which the Court previously rejected.[140]  While Debtor's exposition is not entirely clear, he appears to ask the Court to reconsider its conclusion based on an entirely new version of the facts:

1. After the invalid rollover of the Roth IRA Rollover funds from E*Trade into Solera Bank account #5691 and before the Petition Date, Debtor transferred at least $162,000 from account #5691 to his former spouse.
2. The Roth IRA Rollover funds were part of the transfer to his former spouse, meaning the funds were not in the Disputed Account on the Petition Date.
3. An I.R.S. Form 1099-R has been issued verifying the distribution of the Roth IRA Rollover funds to Debtor.[141]

---

[138] *Jacobs I*, 648 B.R. at 424 (footnotes omitted).

[139] *See* ECF Nos. 77, 107, 140, 157, 158, 167.

[140] *See* ECF Nos. 157 (§ 1(A)(20) of title 31 of the Oklahoma Statutes), 158 (same), 167 (§ 522(b)(3)(C)); *Jacobs I,* 648 B.R. at 430-31 (state law); *Jacobs III*, 2023 WL 7381497, *4-5 (federal law).

[141] That the I.R.S. issued a Form 1099-R to Debtor merely reaffirms the Court's conclusion that the Roth IRA Rollover funds became a taxable distribution upon his failure to roll the funds into an eligible account. The factual issue hinges on whether, as Debtor first alleged, the distributed funds remained in the Disputed Account on the Petition Date, or whether, as he now suggests, those funds were transferred to his former spouse prior to the Petition Date.

The Court acknowledges that its rulings in *Jacobs I & III* were partial rulings on summary judgment, neither final nor appealable, leaving the Court free to reconsider them.[142] The Court will not do so for several reasons: 1) the Court's rulings in *Jacobs I & III* were based on *facts expressly admitted by Debtor*; 2) after receiving a negative ruling based on these admitted facts, Debtor now attempts to present a completely new and conflicting story; and lastly 3) even if the Court were inclined to consider his revamped version of events, Debtor provides no objective documentary evidence, beyond a self-drafted "accounting,"[143] to support this factual about-face. Given the fungible nature of the funds going into and out of Debtor's Solera Bank accounts, it is literally impossible to "trace" where they eventually landed. The Court must fall back on its initial factual finding, *based on Debtor's admissions and apparent understanding on the Petition Date*, that the Roth IRA Rollover funds remained in the Disputed Account on the Petition Date and became property of the estate. Although the Court respects Debtor's right to seek redress if he believes the Court has made a mistake in its interpretation of the facts, the Court does not respect an attempt by any party to alter the facts after an adverse ruling. The Court finds no cause to alter its ruling from *Jacobs I* or *III* regarding the Roth IRA Rollover funds. Those rulings will stand.

## V.     Debtor may not rely on federal exemptions under § 522(d).

Debtor has filed an amendment to Schedule C declaring an exemption for "Post-Petition use of Solora [sic] 401k loan" in the amount of $48,500 under § 522(d)(10)(E).[144] It is unclear

---

[142] *See, e.g., Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under res judicata, a *final* judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (emphasis added)); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 584 (10th Cir. 1995) ("The doctrine of res judicata applies generally to bankruptcy proceedings."); *Gage v. Gen. Motors Corp.*, 796 F.2d 345, 349 (10th Cir. 1986) ("The law of the case rule applies only when there has been a final decision.").

[143] *See* Accounting of Retirement Funds (Pre and Post Petition), ECF No. 157-5.

[144] Amended Schedule C, ECF No. 158, at 5.  There is no evidence in the record that this amendment was properly served on parties in interest, but in an effort to wrap up all potential outstanding issues in this case, the Court will address its substance.

whether this exemption is meant to apply to the 401k Loan Proceeds or the Unauthorized Withdrawals made after the case was filed. Regardless, as the Court discussed in *Jacobs II*, Oklahoma has "opted-out" of the federal exemption scheme under § 522(b)(2) and (d).[145] No exemptions under those subsections are available to Debtor. Debtor is limited to exemptions provided under § 522(b)(3), which includes state law exemptions based on his place of domicile under § 522(b)(3)(A) (i.e., Oklahoma law) and the exemption for retirement funds under § 522(b)(3)(C). The Court has previously determined that no federal or state exemption applies to the 401k Loan Proceeds.[146] Trustee's Objection on this basis is sustained.

## VI.   Trustee may not rely on bad faith to deny access to an otherwise valid exemption.

Trustee suggests that the Solo 401k account was created by Debtor to perpetrate some kind of fraud on the I.R.S.—and possibly his creditors—to gain access to funds in the Disputed Account without paying the appropriate taxes and penalties. Trustee has yet to present evidence that Debtor gained a single advantage from moving his retirement funds from the (unquestionably excluded or exempt) E*Trade accounts into the Solo 401k trust account at Solera Bank. Both the Roth IRA Rollover funds and the 401k Loan Proceeds became property of the bankruptcy estate due to, in effect, unforced procedural errors committed by the Debtor. Because the Solo 401k met the requirements of § 541(c)(2), the Remaining Funds are not property of the bankruptcy estate.[147] Debtor's withdrawal or use of those funds after the Petition Date, including whether he properly paid the associated taxes on those distributions, are outside the purview of this Court. To the extent

---

[145] *Jacobs II*, ECF No. 97, at 3.

[146] *See Jacobs I*, 648 B.R. at 431 (no state law exemption under Okla. Stat. tit. 31, § 1(A)(20)) and *Jacobs III*, 2023 WL 7381497, at *5 (no federal exemption under § 522(b)(3)(C)).

[147] *In re Kunz*, 309 B.R. 795, 799 (10th Cir. BAP 2004) ("[T]he Court finds that because the ERISA-qualified Plan meets the requirements of 11 U.S.C. § 541(c)(2), it is not property of the estate and cannot be reached by the Trustee *despite [debtor]'s power to withdraw funds from the account at any time.*" (emphasis added)), *aff'd,* 124 Fed. Appx. 597 (10th Cir. 2005).

Trustee alleges Debtor has engaged in bad-faith conduct with regard to his post-petition tax obligations, his remedy does not lie with this Court.[148]

The moral of this story is found in the deeply ingrained policy behind § 541(c)(2), which promotes the protection of retirement benefits from creditors to the exclusion of most other considerations.[149] In a case addressing similar issues, finding that bare ERISA qualification was sufficient to find a retirement plan and associated trust were excluded from an estate under § 541(c)(2), the Bankruptcy Court for the Northern District of Illinois summarized the policy behind that statute:

> This result at first may seem counterintuitive in the bankruptcy context, because funds to which a debtor may have some limited access are now excluded from the estate. Under traditional common law trust principles and bankruptcy law, this would not be the case. However, the fact that these funds are excluded from the estate reflects a reconciliation between the congressional intent to protect retirement funds, the congressional desire for consistency in the treatment of assets both within and outside the bankruptcy context, and the broad concept of property of the estate. *See, e.g., Patterson*, 504 U.S. at 764, 112 S.Ct. at 2249 ("our decision today ensures that the treatment of pension benefits will not vary based on the beneficiary's bankruptcy status."); *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Uniform treatment of property interests ... prevent[s] a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' [citation omitted]"); *Anderson v. Raine (In re Moore)*, 907 F.2d 1476, 1480 (4th Cir.1990) ("We see no evidence that Congress intended to invite a creditor to push a debtor into involuntary bankruptcy in order to reach his ERISA funds."); *see also Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990) (holding that ERISA represents

---

[148] *See supra* note 37 and accompanying text; *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376 (1990) ("Nor do we think it appropriate to approve any generalized equitable exception-either for employee malfeasance or for criminal misconduct-to ERISA's prohibition on the assignment or alienation of pension benefits."); *In re Baker*, 114 F.3d 636, 640 (7th Cir. 1997), *as amended on denial of reh'g* (June 4, 1997) ("Inequitable or not, however, the anti-alienation clause governs. There is no 'equity' exception to . . . § 541(c)(2) of the Bankruptcy Code." (citing *Guidry*, 493 U.S. at 365)).

[149] *Guidry*, 493 U.S. at 376 ("Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them.").

the congressional choice to "safeguard a stream of income for pensioners ... even if that decision prevents others from securing relief for the wrongs done them.").[150]

This case is yet another example where congressional policy to protect and encourage retirement savings outweighs its interest in maximizing the value of a debtor's estate for distribution to creditors.[151] The outcome is neither remarkable nor surprising.

## Conclusion

Trustee's Objection is sustained in part and overruled in part. Trustee's Objection to exemption of the Roth IRA Rollover funds and the 401k Loan Proceeds is sustained. As previously found in *Jacobs I* and *Jacobs III*, both the Roth IRA Rollover funds, consisting of $42,033.93, and the 401k Loan Proceeds, consisting of $48,500, held in the Disputed Account, are property of Debtor's estate. Those funds are not subject to exemption under Okla. Stat. tit. 31, § 1(A)(20) or 11 U.S.C. 522(b)(3)(C). To the extent assets remain in the Disputed Account after removal of the Roth IRA Rollover funds and the 401k Loan Proceeds, Trustee's Objection to the exemption of those funds is overruled. Those funds are not property of Debtor's estate. To the extent any assets were distributed from the Disputed Account to Debtor after the Petition Date, those funds are considered to have come from Debtor's non-estate property. All restraints imposed against parties in interest related to the Disputed Account will remain in place until further order of this Court.[152]

---

[150] *In re Baker*, 195 B.R. 386, 391 (Bankr. N.D. Ill. 1996), *aff'd*, 114 F.3d 636 (7th Cir. 1997), *as amended on denial of reh'g* (June 4, 1997).

[151] *See e.g., Patterson*, 504 U.S. at 764–65 ("Our holding also gives full and appropriate effect to ERISA's goal of protecting pension benefits. This Court has described that goal as one of ensuring that 'if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it.'" (internal citations omitted) (quoting *Nachman Corp. v. PBGC*, 446 U.S. 359, 375 (1980))).

[152] *See* ECF No. 41; ECF No. 93.

A separate order consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 29th day of August, 2024.

BY THE COURT:

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

7950.8